NEAL *v.* GILMORE.

1. HIGHWAYS—OBSTRUCTIONS—REMOVAL.
   Act No. 243, Pub. Acts 1881, relating to obstructions and encroachments on highways and the removal thereof, does not abrogate the common-law remedy of abatement of nuisances by the mere act of individuals.

2. SAME—NUISANCE—ABATEMENT.
   An unauthorized obstruction across a public street is a public nuisance which any citizen desiring to travel along the street may abate.

3. SAME—ABATEMENT—SPECIAL INTEREST.
   If a special grievance on the part of an individual abating an obstruction in a highway be necessary, such grievance exists in the case of the highway commissioner by virtue of his office.

4. SAME—ACCEPTANCE OR USER—QUESTION FOR JURY.
   Evidence of the acceptance of a highway by doing work thereon and of its use by the public considered, and *held*, sufficiently in conflict to make the question one for the jury.

5. SAME—OPENING AND WORKING.
   The fact that no part of a highway was opened and worked within four years after being laid out, as required by section 4063, 2 Comp. Laws, does not prevent the establishment of the

highway by user under section 4061, but would merely require a user of ten years, instead of eight.

6. SAME.

It is not essential that every part of a highway should be worked, in order to show the intention of the public authorities to accept the entire highway.

7. TRESPASS—TRIAL—INSTRUCTIONS.

In trespass for removing fences from premises claimed by plaintiff, and alleged by defendant to be a highway, the court instructed that "on the part of plaintiff, * * * who has the burden of proof to show that a wrong has been committed against him, the issue becoming one as to whether this was a public and lawful way, the plaintiff claims that it was not, and that he had a right to inclose the strip of land." In a subsequent part of the charge the jury were told that they must find for plaintiff, unless they found that the road was established as claimed by defendant. *Held*, that, taking the charge as a whole, plaintiff could not complain that the burden was cast on him to show that the alleged highway was not a lawful road.

Error to Tuscola; Beach, J. Submitted June 20, 1905. (Docket No. 38.) Decided October 2, 1905.

Trespass quare clausum fregit, by John W. Neal against John Gilmore and others. There was judgment for defendants, and plaintiff brings error. Affirmed.

*Porter & Haffey* (*Simonson, Gillett & Clark*, of counsel), for appellant.

*B. L. Ransford* (*Quinn & Wixson*, of counsel), for appellees.

BLAIR, J. Plaintiff is the owner of the N. E. ¼ of the N. E. ¼ of section 28, and the S. E. ¼ of the S. E. ¼ of section 21, in township 14 N., of range 7 E. Plaintiff purchased his north 40 in 1875, and constructed a fence on the south side thereof, about two rods distant from the east and west section line between sections 21 and 28. In 1877 plaintiff circulated a petition for the laying out and establishing of a highway commencing at the State road,

some 80 rods east of the common corner of sections 27, 22, 28, and 21, and running west one mile to Saginaw Bay. Plaintiff obtained the signatures of seven freeholders of the township to this petition, and delivered it to the highway commissioner for action thereon, informing him, as he claims, that, if he did not lay out all of the proposed highway, he did not want any of it.    The township records show that on September 4, 1877, a survey was made for the proposed highway, and that on September 5th the same was laid out, except that part between sections 22 and 27.    It was conceded at the trial that the records produced did not show a lawful laying out of the highway. About 1879 the then owner of plaintiff's south 40 constructed a fence along the north side thereof, about 3 rods distant from the plaintiff's fence, and thenceforth the east 80 rods of the alleged highway was inclosed by such fences. Some time in 1902 or 1903 plaintiff purchased his south 40 of one Bradford, and soon thereafter constructed three fences across the east 80 rods of the alleged highway.    In June, 1903, the highway commissioner made an order, and served a copy thereof on plaintiff, requiring him to remove the obstructing fences in accordance with the provisions of the statute relating to the obstruction of highways and encroachments thereon.    In response to this order, the plaintiff served notice on the commissioner, denying the existence of the highway, etc.    No further steps to enforce his order were taken by the commissioner, but in December, 1903, he, with the other defendants herein, cut down and removed the fences.    Thereupon the plaintiff brought this action of quare clausum fregit, to which the defendants pleaded the general issue, with notice that the close where the injuries were alleged to have been committed was a public highway, that defendant Gilmore was highway commissioner, and the other defendants were acting under his direction, in pursuance of the provisions of chapter 6 of Act No. 243 of the Public Acts of 1881, entitled "The Obstruction of Highways and Encroachments Thereon."    The verdict of the jury was in favor of

defendants, and plaintiff brings the record to this court for review.

The important questions presented by the assignments of error, and the only ones to which we think it necessary to refer in this opinion, are as follows:

(1) That the statute relating to obstructions and encroachments is exclusive of all other remedies, and, defendants not having proceeded under the statute, verdict should have been directed for plaintiff as requested.

(2) That there was no evidence of user by the public or as to the acceptance of the highway by the public authorities, and particularly as to the east 80 rods thereof, and therefore plaintiff was entitled to recover.

(3) That the court erred in refusing requests, and in giving instructions as to what facts would warrant the finding of the establishment of the highway by user.

1. This precise question was before the supreme court of New York in *Wetmore* v. *Tracy*, 14 Wend. (N. Y.) 250. It was there held that the statute authorizing commissioners of highways to order the removal of fences by the erection of which highways have been encroached upon does not abrogate the common-law remedy of abatement of nuisance by the mere act of individuals. The remedy given by the statute is cumulative. We fully concur in the reasoning and the result reached in this decision. The case before us is not one where the highway is only partially encroached upon or obstructed, but where the highway is entirely obstructed and closed to travel. In such a case, as said by Mr. Justice CHAMPLIN in *Pontiac, etc., Plank-Road Co.* v. *Hilton*, 69 Mich. 115.

" An unauthorized obstruction across a public street is a public nuisance, which any citizen desiring to travel along the street may abate."

If it were necessary to show a special grievance on the part of the individual abating the nuisance, we think such grievance exists in the case of the highway commissioner by virtue of his office, which gives to him "the general care and superintendence of highways" in the township.

See *Hart* v. *Mayor, etc., of Albany,* 9 Wend. (N. Y.) 589.

2. The evidence of an acceptance of this highway by the doing of work thereon by the public authorities is not very convincing, and, if it lay within our province to determine the question of fact, we might arrive at a different conclusion from that reached by the jury; but we cannot say that there was no evidence tending to support the verdict in this regard. Mr. Lark, who owned some 60 acres of land west of plaintiff, testified that he had done most of his highway labor since 1887 upon this road:

"The overseers allowed me to do my highway labor on that road. I can't say what year. Mr. Gould, who is dead, allowed me the road work there a number of years. I can't remember what years. I wouldn't say, because I don't know. It must be 12 or 15 years ago, maybe 10. * * * Whether it was Mr. Gould or somebody else, they always allowed me to do my road work on that road there, because I wanted to use it for a highway. He allowed me for my road work. I graded and dug ditches. In order to make the grades, I had to dig the ditch on the north side of the road. I don't say on the disputed part of the highway; it was west. I never did any work on the disputed part of the highway; it was west. What Gould allowed me was for doing work on that road, but west of the disputed part, west of Neal's. I did the work at my quarter line east and west, a little west, up to where the land was a little higher, in order to raise the road up, so that I could draw stuff over that part of the road."

He also testified that at his request the highway commissioner put in a box drain at the east end of the road, where plaintiff had dug out the ditch so he could not cross it.

"When the box was put in, there was dirt enough put over it so I could get over it; that made a connection between the two highways. Before the box was put in I couldn't travel it at all. After it was put in I could get across it."

Charles Daniels testified:

"I was overseer of highways there I think three years

ago, and this year I caused statute labor to be worked out on that highway. I think it was three years ago Mr. Bradford did six or eight days' work on that road. I talked with Mr. Bradford before he did the labor. I allowed him for the work on his highway labor. There was enough of the work done so that I accepted it. I went over it. I called it a good fair job of road work. I can't tell you what he used, but he did a good job. He graded up the road the same as any road work. I allowed Mr. Lark for doing labor on that highway, I think it was three years ago. They were the only two in there interested to do work on that highway. I allowed them their highway work. Mr. Lark cut down some trees one year as part of the highway work, so as to clean them out of the road and make it convenient."

As to the use of this road by the public, there was testimony by several witnesses that the road throughout its length was traveled by such of the public as desired to use it going to a summer resort or picnic grounds, known as "Spencer's Grove," on Saginaw Bay; in hauling water from the bay in times of drought; in drawing fishing nets and apparatus to the bay and hauling back fish; and by Mr. Lark in hauling out his crops. There were no residences or buildings along the road, and the portion west of plaintiff's land was obstructed to some extent, sometimes impassable, and was not so good as the east 80 rods, where practically all of the witnesses agree it was a reasonably good highway. Mr. Roscoe Black, a witness for defendants, testified:

"At the time this road was first laid out, it was practically used for the people to turn their cattle out onto, and then, of course, when they began to fence up these prairies, the cattle had to go to the bay. Then at the time of dry weather people had to draw water. Most every one had to at least, and they drove down that way. Well, at that time that was the route we used; just down through this first 80 rods from the east. Then this piece that Mr. Lark now owns wasn't fenced. We usually turned off the highway there and went across Mr. Lark's place to the shore, after passing this first 80 rods. Then, when he fenced that up, of course, we had to keep straight on down. We kept straight down, when we wanted to go

to the grove or something like that. That fence was built on Mr. Lark's place, I suppose about 15 years ago. First he built part way down, I think 80 rods, and afterwards he built the balance. Since that time it has been used for travel to the grove in the summer, and drawing water, ice, etc., in the winter, and logs. They pick up quite a good many logs on the shore. The east end has always been used for public travel since it was laid out, until it was shut up this last time, but the west part was closed up about 18 years ago by the high water and the logs coming in there. I can't say how long that continued to keep it closed. It wasn't very long. I passed through other times when the obstructions were pretty close, simply a little track where you could drive through. But there has always been a good beaten track from the time the fences were first built across the first 80 rods. Since Mr. Lark built his fence there has always been a good beaten track the balance of the way at all times. I used it occasionally. I frequented the grove by that route. We would drive generally. Sometimes we would walk."

Mr. Buchanan, a witness for plaintiff, testified:

"It is a fact that the road as far as the west end of Mr. Neal's 40 is a pretty good highway. The road as far as the west line of Mr. Neal's 40 from the east side is a pretty good highway; always has been since I have known it. * * * If I owned Lark's place, I would not think of discontinuing that highway. So far as I know, I suppose Mr. Lark draws all his produce from his land in section 21 to his own farm on that road."

Lester Briggs, a witness for the plaintiff, testified:

"Between Mr. Neal's and Mr. Bradford's the first 89 rods is a pretty passable roadway; a well-beaten track, where they drawed things over. It is quite a looking highway that portion."

Mr. Ward, a witness for the plaintiff, testified:

"It was a good road at the point where Mr. Neal fenced it in; yes a good highway for 80 rods."

Mr. John Bradford, a witness for the plaintiff, testified:

"I got charge of Mundy's land shortly after he bought it, after he got it fenced. I think I bought of Mundy in '85. I think I bought it a year or two before it was as-

sessed to me. For several years before I had charge of the Mundy property I think I done the road work or saw it was done. At the time I got charge of this Mundy land there was not a road fence on the north side of it. I helped Mr. Mundy build a good deal of it. The east 20 of it was fenced, I think. I think there was a pole fence there. It was built right, I think, somewhere near where the fence is now, or where it was when I bought it; I don't know where the line is. We have had it resurveyed since. I think it was not on the line. When I bought it, I supposed that there was a highway there. I treated it as such. * *· * I have known that strip between the two fences to be used as a road for the public to travel over ever since I knew the place. * * * It was commons for a good while. Finally, when it was fenced up to a definite line, people could travel between the fences. That quarter line road from the south is a little better than this in some places. That isn't much of a road there. Now the lower parts of them there isn't either of them very good roads. Between Neal's 40 in 21 and the one he recently bought, that is a pretty fair line· of road; fairly good road in dry time most any time. It is better than the lower end of the road."

Plaintiff produced evidence tending to show that no work had ever been done upon the road by the public authorities, and that it was not used by the public. The evidence was conflicting, and we think the case was properly one for the jury. *Village of Grandville* v. *Jenison*, 84 Mich. 54; *Gage* v. *Township of Pittsfield*, 120 Mich. 436.

The fact that no part of the highway was opened and worked within four years after its being laid out, as required by section 4063, 2 Comp. Laws, does not prevent the establishment of the highway by user under section 4061. The failure to open and work the road within four years would merely require a user of ten years instead of eight; and it was open to the jury, under the evidence in this case, to find a user much longer than ten years. The evidence is undisputed that no work was done upon the 80-rod strip between the fences, which was obstructed by the cross-fences torn down by defendants; but it is also

substantially undisputed that this 80 rods was a reasonably good highway, which did not need to be worked. It is not essential that every part of a highway should be worked in order to evidence the intention of the public authorities to accept and maintain the entire highway. The jury might properly find, under the evidence in this case, that the portions worked were so worked for use in connection with the 80 rods not worked.

3. Plaintiff contends that the court improperly instructed the jury that the burden of proof was upon the plaintiff to show that the highway was not a lawful road. The court said to the jury upon this subject:

"Now, upon the part of the plaintiff, who brings the action here and who has the burden of proof, practically, to show that a wrong has been committed against him—the issue becoming one as to whether this was a public and lawful highway—the plaintiff claims that it was not, and that he had a right to inclose the strip of land in front of his two 40's, or dividing his two 40's, and had a right to the exclusive use and control of it.

"On the part of the defendant, it is claimed that this is a lawful highway, and, while it is admitted, it is claimed that proceedings were attempted to be taken in 1877 by the commissioner of highways to lay out a highway from the section corner between sections 21 and 28, west to the bay shore, on the section line between sections 21 and 28, while it is admitted that what appears from the record here does not constitute a regular and lawful paper laying out of the highway, it is claimed that as a matter of fact the highway was laid out while the proceedings were irregular and defective, and not complete; that it was as a matter of fact laid out by the commissioner; and that, following that laying out, the road has become a road by user by the public for more than eight, for more than ten years."

No request to charge was presented upon this subject, nor was the attention of the court called to the error, if any, in the instruction. In subsequent portions of the charge the court substantially instructed the jury that they must find for the plaintiff, unless they found that the road was established by user as claimed by the defend-

ant.  Taking the charge as a whole, we do not think the plaintiff was prejudiced by the instruction complained of. We think the charge was fair, and correctly presented the issues to the jury for their determination, and contained the substance of plaintiff's requests, so far as they properly reflected the law.

The judgment is affirmed.

MCALVAY, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.