## VANCE *v.* VILLAGE OF PEWAMO.

1. DEDICATION—STREETS AND HIGHWAYS—INTENT.
   The intent to dedicate land to the use of the public, followed by acceptance and user, is essential to a dedication.

2. SAME—EVIDENCE.
   Where owners of land fence off a strip continuing a street, and use it for a lane and for access to their property without

making any declaration of a dedication to the public, and the municipality in which it is situated makes no formal acceptance, and no continued user by the public is shown, plowing the strip to a small extent, and performing road work thereon at one time, do not show a sufficient dedication and acceptance to create a public street.

3. SAME.

The facts and circumstances relied upon to prove the existence of an intent on the part of a dedicator, and acceptance by the public, must be of a positive and unequivocal character.

4. SAME.

Acceptance and user may give rise to a presumption of intent to dedicate.

Appeal from Ionia; Davis, J. Submitted April 5, 1910. (Docket No. 3.) Decided June 6, 1910.

Bill by Chauncey B. Vance and Mary A. Vance against the village of Pewamo to restrain a trespass upon certain land. Defendant filed an answer in the nature of a cross-bill claiming such land by virtue of a dedication for a highway. From a decree for defendant, complainants appeal. Reversed, and decree entered for complainants.

*F. C. Miller* and *Lyon & Moinet*, for complainants.

*R. A. Hawley*, for defendant.

McALVAY, J. The dispute in this case arises between these parties upon the question as to whether a certain strip of land claimed by complainants is a public street. The village of Pewamo, located on sections 12 and 13 in the township of Lyons, Ionia county, was platted by two men named Blanchard, who owned the lands included therein July 25, 1859, and a map of such platting was on that date duly recorded. This map contained lots numbered from 1 to 194, inclusive, and was divided by certain streets, running north and south and east and west. There were also other lots, called "outlots," included in the map, located both on the north side and on the south

side of the body of lots above described, and beyond and
entirely outside of the street lines of the map. These out-
lots were 16 in number, and were of various sizes. Out-
lots Nos. 1 to 5, inclusive, were located north of the 194
lots and on the north side of North street. Outlots Nos.
10 to 16, inclusive, were located on the south side of the
194 lots and on the south side of Washington street.
North and Washington streets ran east and west. Hig-

.man street was one of the streets which ran north and
south, beginning at the south line of North street, opposite
to outlots 2 and 3, and extending south to the north line
of Washington street, opposite to outlots 12 and 13. It
did not extend south beyond Washington street between
outlots 12 and 13. These outlots 12 and 13 were each
about 16 rods square.

The dispute in this case involves only outlots 12 and 13.
The title of complainants to the west one-half of lot 12,
through successive mesne conveyances, is not disputed
except as to the strip hereafter mentioned. Complainant
Chauncey B. Vance purchased the "west one-half of out-
lot 12 of the village of Pewamo" according to the recorded

plat, April 26, 1883, for a consideration of $1,400; the grantor reserving the new portion of the barn located thereon, with the right to remove the same within three months. This, grantor purchased in 1868, and took possession in 1869. He built a house and barn and continued in possession until he sold to complainant. The strip of land in dispute is about four rods wide, one-half on either side of the line between outlots 12 and 13, and extends south from the south line of Washington street to the south line of the lots.

The diagram shows the location of these outlots and the disputed strip.

The following, briefly stated, is the claim of complainants: This strip was opened by Mr. Trask, complainants' grantor, and Mr. Pennington, the owner of outlot 13, at or about the time they purchased, in 1868, by each putting up a fence on his side of, and two rods from, the north and south line between these lots. Trask built his barn towards the south end of his lot, near the strip, and used it as a lane to his barn. There was a fence across the south end of this strip, in which was a gate, which was used by Pennington to go to land he owned next south, and by complainants to go to the farm to the east owned by Mr. Vance. Said complainant has, during the time since his purchase, erected pigpens within its limits, and several times built fences across it, provided with bars or gates. It is at present entirely covered with sod, and has been used by him for calf yard and horse grazing. There are several maple trees on the strip; located about the middle is a large one. Under these trees complainant has, for years, habitually sat with his family and friends, and used and mowed it as his lawn. This strip has never been all turnpiked or plowed. A few furrows have been plowed along the west side, next to Pennington's fence, which Mr. Vance claims was done before he purchased. There is a dispute as to who did this plowing and when it was done. More than twenty years ago complainant put in a cellar tile drain down and across this strip from the

house to an open ditch in Pennington's field south of it. He also put in on Washington street, under the approach to this strip, a tile drain or culvert to allow the water on that street to pass along.

Defendant village was incorporated in 1871. In May, 1896, the village council passed a resolution that all fences on streets belonging to the municipality be removed. Notice of this resolution was served on complainants, and they refused to remove their fence across this strip. It was torn down by the village authorities, and immediately rebuilt by complainants, who gave notice to the village officers that they were trespassers, and forbade further interference with their property. Fences were pulled down and replaced at least twice after this, and then complainants filed their bill of complaint, and were granted an injunction in this suit. They claim to be the owners in fee of this strip of land, and ask the court to so declare, and to enjoin defendant and its officers from trespassing thereon and interfering with their peaceable possession.

Defendant filed its answer and cross-bill, claiming that this strip was 39 years before opened and dedicated by the owners to the public as a public street, and has so continued ever since, and that defendant accepted such dedication, and the same has been used as a public highway for that length of time and always kept open for public use. Said cross-bill asks affirmative relief, and an injunction against complainants, from obstructing or closing such street. Complainants answered the cross-bill, denying its allegations and all right to relief. The case was heard upon the issues joined. The court denied relief to complainants, and found that the strip in dispute was a public street as claimed by defendant, and granted relief as prayed in its cross-bill. Complainants have appealed. Defendant relies upon the claim that there was, in 1868 or 1869, a common-law dedication of this strip of land by the owners to the public use as a highway, and that such dedication was accepted; and also claims by prescription and

adverse user, or by both such dedication and acceptance and adverse user.

The claimed dedication is based upon the fact that this strip was opened by the owners with intent to dedicate. Such intent cannot be inferred from that fact alone. The inference that it was for private use and convenience is equally strong. Much stress is also placed upon the fact that the strip was of equal width with Higman street and a prolongation of it. That it extended south from Washington Street opposite Higman street is of no force in support of the theory of dedication. The line between the outlots of these owners, by mere chance, began at the south line of Washington street at a point which would be in the center of Higman street, if extended. At no other place could these adjoining owners have opened a common lane for their personal use. This strip extended south 16 rods. The fields south of it were farming lands, not platted, but divided, as usual, into fields. There was no public way farther south. This strip was a *cul-de-sac*, and from the time of its opening was used by these owners, and at once became a necessity to complainants' grantor, and has so continued for complainants ever since, and is the only access to the barn, as well as affording convenient access to the side entrance of the house. This strip was opened before defendant existed, and there is no evidence in the case that the township authorities ever exercised any control over it. The owner of outlot 13 owned and cultivated adjacent fields, and Mr. Trask owned his farm to the east, going to and from it through the south gate, and these outlots were practically acreage lots. A barn was soon built by Mr. Trask, complainant's grantor, near this strip towards the south end. For two men engaged in farming, a lane four rods in width cannot be presumed to be unnecessarily wide, considering the vehicles usually owned by farmers, which it would be necessary to drive in and out through it and turn around upon it and also leave in the lane, as occasion might re-

quire. From its width the inference would not arise that it was dedicated to the public use.

In this case no declaration of these parties is shown that a dedication was intended. "The vital principle of dedication is the intention to dedicate." Acceptance and user by the public completes a dedication, and the intent to dedicate may be presumed by that fact. There is no record of any action by the village accepting this strip, nor any record whatever of anything done in regard to it. If there was any acceptance, it must have been by continued user by the public, and such exercise of control over it by the authorities from which an acceptance could be reasonably inferred. Upon this proposition the record shows that after the strip was opened some plowing was done along the west fence and some dirt taken out. Mrs. Pennington testified that many years ago men with plow and scraper were working there. She did not know who they were nor connect them with the village. Two witnesses for defendant testified that plowing was done near the west fence during the year 1891. One does not connect this work with the village, and admits that he is not on good terms with complainants. The other testified that he worked upon this strip, with a Mr. Lyon, the road tax for his brother, about half a day, under the street commissioner, plowing and scraping. He could not give the name of this officer, and Mr. Lyon testified that he never worked with him at that time or place. The other claimed control and regulation of this strip by defendant relates to cutting weeds there by a witness employed by the village in 1904. This was after the fences had been twice torn down and replaced and the present dispute begun, and is of no probative force upon the question of acceptance and control. It is quite noticeable that no officer of the village is produced as a witness to make this proof. The foregoing contains all we are able to find in the record relative to any control of this strip by the public authorities.

The facts and circumstances relied upon by defendant,

to prove an intent on the part of these owners to dedicate this land to the public use, do not show a clear intent to dedicate, but, on the contrary, this evidence is of little force, and not convincing.

" The facts and circumstances relied upon to prove the existence of an intent on the part of the dedicator must be of a positive and unequivocal character. Since, by the dedication, valuable rights in lands pass from the owner, no presumption of the intent to dedicate arises, unless it is clearly and expressly shown by his acts and declarations, or by a line of conduct the only reasonable explanation of which is that a dedication was intended." 9 Am. & Eng. Enc. Law (2d Ed.), p. 38, and cases cited.

In this State this rule was first announced in *People* v. *Jones*, 6 Mich. 176, and has been consistently followed ever since.

The questions of dedication and acceptance are always so closely connected, both being essential to establish a common-law dedication of land to the public use as a highway, that it is natural and usual to consider both together. The same unequivocal and convincing proof is required to establish both facts. *Diamond Match Co.* v. *Village of Ontonagon*, 72 Mich. 263 (40 N. W. 448); *Chapman* v. *City of Sault Ste. Marie*, 146 Mich. 23 (109 N. W. 53), and cases cited.

The right to this strip of land by adverse and continuous user on the part of the public has not been established. The great weight of the evidence, much of it undisputed, is to the contrary. The evidence of its public use, as shown by the record, was so rare that it adds to the weight of the evidence to the contrary, and we may say that no general use of this way by the public has been shown. We are satisfied from this record that this way was opened in 1869 by the adjoining owners for their own convenience and not for the public use. That the use of it by complainant Vance, since his purchase in 1883, has been continuously of the same character, and has been absolutely inconsistent with a public use, and the use by the

Penningtons of the other half has been of like character as long as they used it. It appears that complainants claimed a few years ago to own the whole strip, and forbade them its use. While complainants' occupancy of the entire strip has for some years been exclusive, yet we do not think that this has continued for a sufficient length of time to cut off the Pennington title.

The decree of the court below is reversed, and a decree will be entered in this court in favor of complainants and against defendant, determining that this strip of land is not a public street, but a private way in which the defendant has no right or interest, and that complainants, as the owners in fee of the east one-half, are entitled to the possession and enjoyment thereof, and perpetually restraining defendant village, its officers and agents, from trespassing thereon or in any way interfering therewith. Complainants to recover costs of both courts.

MOORE, BROOKE, BLAIR, and STONE, JJ., concurred.