HINCKLEY *v.* DENNISON.

1. HIGHWAYS AND STREETS—OBSTRUCTIONS — NUISANCE — EQUITY
—POSSESSION.
    It is a nuisance to obstruct a public highway by constructing
    a fence across it, and a bill lies to enjoin a defendant from
    maintaining the nuisance, even though he is in possession of
    the premises.

2. SAME—ADVERSE USER—PRESCRIPTION—STATUTES.
    Under 2 Comp. Laws, § 4061, a private road that has been laid
    out as a public way and used and maintained as such for
    upwards of ten years, becomes a public highway by prescrip-
    tion whether the original proceedings to take it were valid or
    not.

Appeal from Livingston; Miner, J. Submitted Janu-
ary 11, 1912. (Docket No. 46.) Decided March 29,
1912.

Bill by E. Wray Hinckley, highway commissioner of the
township of Hamburg, and others, against James Denni-
son for an injunction to prevent defendant from obstruct-
ing a public highway. From a decree for complainants,
defendant appeals. Affirmed.

*Louis E. Howlett* and *W. E. Robb*, for complainants.
*Shields & Shields* and *B. T. O. Clark*, for defendant.

STEERE, J. The bill of complaint was filed in this suit
to restrain defendant from closing a road extending in an
easterly and westerly direction across his farm of 80 acres,
which is described as the E. ½ of the N. E. ¼ of section 11
in Hamburg township, Livingston county. Complain-
ants are the commissioner of highways and township board
of said township.

The issue in this case is whether this way is a legal
highway, open to public travel, or a private road. It is

undisputed that the road was originally opened and used, in the early settlement of that locality, as a private road by two pioneers named Crawford and Maloney. Maloney owned the land in question, and Crawford an 80 acres adjoining him on the west. The road was opened from the east across the land now belonging to defendant and up to Crawford's house. In opening the road, they did not follow a straight line, but varied in direction to secure the best and easiest route. For many years, it bore the name of Crawford's private road.

Just when it was originally opened is not definitely shown, but apparently somewhere in the neighborhood of 1850. A witness named Hendricks, 72 years of age, who lived in the neighborhood from early childhood, testified that it was in existence when he was a small boy. Another witness testified that he knew it as early as 1854, and a gate was maintained across said road between that time and 1860. It stands undisputed that this was a private road from its inception until 1882, when, in the progress of development, in opening highways through the country, a petition was filed with the commissioner of highways of the township, signed by the requisite number of freeholders, praying for the laying out of a highway, described as follows:

"Commencing at the quarterpost between Hendricks, Kenney and Bishop, running east eighty rods to the quarterpost between Kenney, Moon, Crawford and Bishop; thence north 80 rods to the quarterpost between Bishop and Crawford; thence east to what is known as Crawford's private road; thence follow said private road to the highway running north and south."

The records of the township show that on the 3d day of February, 1882, the highway commissioner proceeded to lay out a highway according to such petition, an order being recorded, evidently following some carefully prepared form, declaring that the commissioner proceeded according to law to review the premises described in the application and determine the necessity for laying out

such a highway, and to adjust and impartially appraise the damages thereon, and that he considered and determined that a public highway should be and the same was by said order "hereby laid out" pursuant to the application, describing the highway according to the terms of the petition up to Crawford's private road, "thence following said private road to the highway running north and south," returning that he had justly and impartially appraised the damages and made an award. An appeal seems to have been taken from the finding of the commissioner of highways, and in the finding of the township board a brief description of the highway to be laid out does not include Crawford's private road, but sustains the commissioner in his determination. The testimony shows that at the time such action was taken a gate was maintained across this road near Crawford's place.

Charles D. McDevitt at that time owned the premises which are now owned by defendant, and therefore owned this road. He testified that he owned and lived upon this land for many years, having bought it some 32 years before. When he bought the place, there was a gate on the road by the creek; that he remembers the highway being laid out through to what is known as Pleasant Lake, which was two or three years after he moved upon the land; that the road started at Pleasant Lake and ran zigzag to Crawford's and came out to this road at his place, and then came "kittering" 80 rods across his 80; that he made a claim for damages when the road was laid out, but it was not allowed; that he thought it was three or four years after this action by the highway commissioner when the gate was taken down, and thinks it was the pathmaster who came and did it. He knew at that time that they were laying out a public road across his land, but didn't think they had a right to do so without paying the expense. This witness continued to own the land in question until 1899. He took no appeal from the action of the township authorities, and did not, in any legal proceedings, dispute the right of the public to take

and use this private road for a public highway. Other witnesses testified that the road was opened up right after it was laid out in 1882, and a witness named Crawford testified that the gate was taken down at that time. Numerous witnesses testified as to its continuous use as a public highway from that time on, and of road work being done by different settlers in the community along this highway at public expense.

One of the issues in this case is whether or not any public work was done upon this road, and the amount of it. We think the testimony is overwhelming to the effect that the road was improved at public expense at different times and to a considerable extent. Three men who, at different times, were overseers of highways testified to having authorized and directed work upon this road; and other witnesses testified to doing work of various kinds, at different times, such as putting a small bridge over a waterway, putting in tile, grading, and scraping. One witness testified that he scraped dirt nearly the whole length of the road.

It is the contention of the defendant that the road was cared for by the private owners, kept in possession by them, and only used by a limited number of well-known persons, who obtained permission from the owners to pass that way. Much testimony was introduced tending to show that it was known as Crawford's private road, and that its private character was maintained and generally recognized.

No trouble is shown to have arisen or interruption occurred in the public use of the road, or in the public authorities making whatever improvements upon it they saw fit, until the summer of 1910, when a controversy arose between complainant Hinckley, the commissioner of highways, and defendant in regard to a fence which defendant built along a portion of this highway, and which the commissioner claimed encroached upon the same. As a result of such dispute and the bitterness which it engendered, defendant asserted that he was the owner of this

road, and the township had no right to interfere. He then built a fence directly across the way, stopping all travel. A rather unseemly scramble arose between Hinckley and defendant, in which the fence was torn down and rebuilt and various threats made and legal proceedings instituted, which finally resulted in this bill of complaint.

The fence defendant built across the road was barbed wire fastened on posts. The highway commissioner served notice on him to remove it, and, it still remaining after 30 days, he went over and removed it, when defendant again rebuilt it. Defendant then stood guard and forbade any one touching the fence. An injunction was finally served on him after the fence had been torn down in the night, by the commissioner, while defendant was temporarily absent. Serious complaint is made of the conduct of complainants in that connection, and it is asked that the bill be dismissed, because they do not come into a court of equity with clean hands.

This is an alleged case of obstruction of a highway, not an encroachment. It was in general use, being traveled by the public, and was part of a rural free delivery mail route. If it is a highway, such improper obstruction of it is a nuisance; and an injunction bill is a well-recognized method of abating such nuisances, even when defendant is in possession. *City of Mt. Clemens* v. *Sanitarium Co.*, 127 Mich. 115 (86 N. W. 537), and cases cited; *Neal* v. *Gilmore*, 141 Mich. 519 (104 N. W. 609).

It is well settled that a private road cannot be converted into a highway by time and public use, standing alone, no matter how long continued. Invited or permissive use granted by the owners will not avail. But where such conditions exist for a time, if the relations between the public and the owners change, where official action is being taken to make it a part of the system, and the owners have notice of that attitude, which is accompanied by the exercise of public control and public maintenance, it may and will, in due course of time, become a highway

by prescription. Section 4061, 2 Comp. Laws, provides in part:

"All roads that shall have been used as such for ten years or more, whether any record or other proof exists that they were ever established as highways or not, and all roads which have been or which may hereafter be laid out and not recorded, and which shall have been used eight years or more shall be deemed public highways, subject to be altered or discontinued according to the provisions of this act."

This road was originally private, and controlled by the owner of the land, who maintained a gate across it, near a creek, as a physical evidence of private ownership. Action was taken in 1882 by the proper township authorities to open it for a public thoroughfare, as a part of the highway system of the township. By virtue of these proceedings, whether legal or not, the highway commissioner had this gate removed, took charge of the way, and threw it open to the public with full knowledge of the then owner. Its peaceable use as a public highway, thus initiated, continued for much more than 10 years, and until recently interrupted by defendant. It has been improved from time to time at public expense. We concur in the conclusions reached by the learned circuit judge that the testimony clearly shows an implied dedication by user for the statutory period, together with an early acceptance of such dedication and appropriation of the property to the public use by proper officials, who took charge and expended public funds in its maintenance.

The decree is affirmed, with costs.

MOORE, C. J., and MCALVAY, BROOKE, BLAIR, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.