SOUTH BRANCH RANCH CO. *v.* EMERY.

HIGHWAYS AND STREETS—USER—ACCEPTANCE.

> A road which at first was used as a winding path along a
> water course and was traveled by the public for over 10
> years as a drive for general use, but not accepted by any
> unequivocal act of the authorities within the 10-year period,
> as by improving or exercising control over it, was not a
> highway, within the meaning of the statute, by adverse
> user. 2 Comp. Laws 1915, § 4307.[1]

Appeal from Crawford; Sharp, J. Submitted January 6, 1916. (Docket No. 47.) Decided March 31, 1916.

Bill by the South Branch Ranch Company against William Emery for an injunction restraining defendant from interfering with certain of complainant's fences. From a decree for defendant, complainant appeals. Reversed.

*J. O. Murfin* (*Howard H. Campbell,* of counsel), for complainant.

KUHN, J. By its bill the complainant seeks to restrain the defendant from interfering with certain fences erected by the complainant across what is known as the "River Road," which extends from Chase's bridge a few miles out of the village of Roscommon, north and east, following the course of the south branch of the Au Sable river, to near the mouth of that stream. It is the claim of the defendant that this road had become a public highway by user, and in support of this claim reliance is placed on the stat-

[1] On the question of public easement acquired by prescription, see note in 11 L. R. A. 56.

ute, section 4061, 2 Comp. Laws (2 Comp. Laws 1915, § 4307), which reads as follows:

"All highways regularly established in pursuance of existing laws, all roads that shall have been used as such for ten years or more, whether any record or other proof exists that they were ever established as highways or not, and all roads which have been or which may hereafter be laid out and not recorded, and which shall have been used eight years or more, shall be deemed public highways, subject to be altered or discontinued according (to) the provisions of this act. All highways that are or that may become such by time and use, shall be four rods in width, and where they are situated on section or quarter-section lines, such lines shall be the center of such roads, and the land belonging to such roads shall be two rods in width on each side of such lines."

The learned trial judge sustained the contention of the defendant, and the complainant has appealed.

It is the complainant's position that a proper construction of this statute is that mere user over a period of years, however long continued, by the public, does not ripen into a prescriptive right; that there must be some evidence pointing to the control of the road by the public authorities; and, also, that the evidence in this record does not establish such a use as could possibly be held to give to this road the status of a public highway. The trial judge, after hearing the evidence, was convinced that the use to which the road in question had been put was of such a character that it could be properly said that it was used as a public highway.

It is the rule, established by this court, that the character of the use, rather than its frequency, is decisive of this matter. As it was said in *Village of Grandville* v. *Jenison*, 84 Mich. 54, at page 68 (47 N. W. at page 603):

"The extent to which a road is traveled does not govern. The law does not fix the number who must

travel upon a road in order to determine whether it exists by user. It must be used by the public, and the public are all who have occasion to use it. In the case of *Baldwin* v. *Herbst*, 54 Iowa, 168 [6 N. W. 257], it was held that it would be sufficient to constitute a highway by user if it was traveled over as much, or about as much, as it would have been if it was laid out by the statute, and traveled as much as the circumstances of the surrounding population, and their business, required."

See, also, *Gage* v. *Township of Pittsfield*, 120 Mich. 436, 438 (79 N. W. 687).

An examination of this record is convincing that the conclusion reached by the trial judge with reference to the use by the public finds support in the testimony of the witnesses, from which it appears that while it was in fact at first a meandering trail, winding in a tortuous line along the stream, nevertheless it was used as a thoroughfare by all who had occasion to pass up and down the river; that it was the only regularly traveled road in the direction in which it ran; and that it had been used for automobiles as well as for teams and horses, and passage on foot, for the period required by the statute.

The main contention arises over the construction of that part of the statute which provides that a public highway shall be established "when used *as such* for ten years or more." The learned trial judge, in his opinion, stated that it would be reading a requirement into the statute which does not exist if more than the mere user by the public over the stated period of time were required. On behalf of the complainant, it is contended that the language of the statute is clear that mere user alone by the public over the period of ten years, even though uninterrupted, does not establish a public highway, but the user must be "as such," or as a public highway, over this period, in order to satisfy the statute; and that, as the road ran through

wild and uninclosed lands, the presumption is that the use shown was simply permissive.

An examination of the decisions of this court is satisfying that the construction of this statute is no longer a. matter of first impression in this court, for in the case of *Stickley* v. *Township of Sodus*, 131 Mich. 510, 517 (91 N. W. 748, 59 L. R. A. 287), where this statute was under consideration, it was said:

"The use' required by the statute is one accompanied by some act on the part of the township authorities, open, notorious, and hostile to the private ownership; some act which gives the original owner notice that his title is denied. (Citing cases.)  Mr. Elliott says:

"'It must appear that the owner fully consented to the change, or there must be some element of estoppel to deprive him of his rights as the owner of the fee. Where a way is laid out and used as a private way, the mere fact that the public also makes use of it without objection from the owner will not make it a public way.' Elliott, Roads & S. § 5.

"This doctrine applies with special force to those roads built in a new country, and for such purposes as was the road in question.  The mere use, however long, is not sufficient to effect a change. (Citing cases.) In *Speir* v. *Town of New Utrecht* it is said:

"'The mere fact that a portion of the public travel over a road for 20 years cannot make it a highway, and the burden of making highways and sustaining bridges cannot be imposed upon the public in that way. There must be more. The user must be like that of highways generally. The road must not only be traveled upon, but it must be kept in repair or taken in charge and adopted by the public authorities. * * * A private way, opened by the owners of the land through which it passes for their own uses, does not become a public highway merely because the public are also permitted for many years to travel over it.' 121 N. Y. 429 [24 N. E. 694].

"In *Stewart* v. *Frink* it is said:

"'It would be unjust, as well as ungracious, to take advantage of his (the landowner's) generous permission to use his land for public convenience, and the law will not. allow this to be done.' 94 N. C. 487 [55 Am. Rep. 619].

"This statute was not passed with the view to convert private roads into public ways. It was designed to remedy defects in establishing and recording highways. *Green* v. *Belitz,* 34 Mich. 512."

It is said, however, that this was originally laid out as a private way, where the use of the way by the public was for the benefit of the owner of the way. But in the more recent case of *Chapman* v. *City of Sault Ste. Marie,* 146 Mich. 23, 28 (109 N. W. 55), this distinction is referred to, and it is there said:

"Plaintiff's counsel insists, however, that even if it was competent for the jury to find a dedication to the public from user for the statutory period, there was no evidence of any acceptance of such dedication and the judge erred in submitting the question to the jury. The learned trial judge correctly instructed the jury that, 'not only the general public must use it and travel upon it as a thoroughfare, but the implied dedication must be accepted by the public authorities and the way taken in charge and maintained as other highways.' (Citing cases.) Important consequences flow from the acceptance of a highway by the public authorities, and the rule is a salutary one which requires that mere user by individuals shall not render the corporate body liable for such consequences."

Elliott, in his work on Roads and Streets (3d Ed.), § 170, in speaking of this question, says:

"There has been much diversity of opinion as to whether user by the public will amount to an implied acceptance and cast the burden of maintenance upon the local government. Prof. Greenleaf says: 'It does not follow, however, that because there is a dedication of a public way by the owner of the soil, and the public use it, the town, or county, or parish, is bound to repair. To bind the corporate body to this extent, it is said that there must be some evidence of acquiescence or adoption by the corporation itself, such as having actually repaired it, or erected lights or guide posts thereon, or having assigned it to the surveyor of highways for his supervision, or the like.' This statement, it is noticeable, is a very careful and guarded

one, and it is indicative of the doubt in the mind of the writer. In another treatise appears language more clearly exhibiting the uncertain state of the law."

He then states that the better and prevailing rule seems to be that an acceptance may be implied from a general and long-continued user by the public. But in speaking of the authorities which hold to the contrary he cites the case of *Chapman* v. *City of Sault Ste. Marie, supra,* quoting the language above set forth.

In *Neal* v. *Gilmore,* 141 Mich. 519, 526 (104 N. W. 609, 611), where the statute was again under consideration, it was said that:

"Plaintiff produced evidence tending to show that no work had ever been done upon the road by the public authorities, and that it was not used by the public. The evidence was conflicting, and we think the case was properly one for the jury."

In *Vance* v. *Village of Pewamo,* 161 Mich. 528 (126 N. W. 978), where the question was whether a disputed strip of land could be said to have been so used as to be a public highway, the court said:

"This strip was opened before defendant existed, and there is no evidence in the case that the township authorities ever exercised any control over it. * * * If there was any acceptance, it must have been by continued user by the public, and such exercise of control over it by the authorities from which an acceptance could be reasonably inferred."

With this construction that has been given the statute by our own court, we see no escape from the conclusion that the mere fact that a portion of the public travels over a road for any number of years cannot make it a highway; and that the road must not only be traveled upon, but that some act on the part of the public authorities must be shown from which it might be concluded that the authorities had taken charge of the highway. That this is what the legis-

lature had in mind and intended to include in using the words, "used as such," is in our opinion determined by these decisions.

As it does not appear—nor is there any claim made —that there was any proof of an element of public control of the road, we are forced to disagree with the learned trial judge as to his conclusion that the road in question was a public highway; and the decree dismissing the complainant's bill must be reversed, and a decree entered according to the prayer of the complainant's bill, with costs to the complainant.

STONE, C. J., and OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.