RENO v. JOHNSON.

1. HIGHWAYS AND STREETS—PRIVATE ROAD—DEDICATION—ADVERSE USER—STATUTES.

    Where the dedication of a street leading to privately owned summer resort grounds was never accepted by the public authorities, but it was improved and maintained by funds subscribed by lot owners and was always treated as a private way by the maintenance of signs, etc., the occasional use of same by hucksters, grocerymen, etc., supplying the needs of the resorters, and even the occasional use by the general public *held*, not such adverse user as to constitute it a public highway under 1 Comp. Laws 1915, § 4307.

2. SAME—UNACCEPTED DEDICATION DOES NOT CONSTITUTE A ROAD A PUBLIC HIGHWAY.

    The unaccepted dedication of land for a highway alone does not constitute it a highway "regularly established in pursuance of law" within the purview of said statute.

3. SAME—ADVERSE USER—TACKING ON—PRESCRIPTION.

    The use by fishermen, hunters, etc., of a road along a lake shore which changed from year to year as the contour of the beach changed may not be tacked on to the use of

On public use as acceptance of dedicated highway, see note in 18 L. R. A. 510.

a permanently established road leading to privately owned summer resort grounds to make up the statutory period to constitute it a public highway by adverse user, since the adverse use or possession of one piece of property, even for the statutory period, would not give a prescriptive right to the use or possession of another piece of property.

4. SAME—PRIVATE ROAD—CONTRIBUTIONS FOR MAINTENANCE.
Contributions of small amounts towards the maintenance of a private road leading to summer resort grounds, made by persons owning lots in another plat, would not inure to the benefit of the owner of said plat.

5. SAME—DEDICATION—NOTICE.
One claiming rights in a private road is bound to know that dedication alone does not make it a public highway.

6. SAME—PRIVATE ROAD—INJUNCTION—EQUITY.
The expenditure of several thousand dollars on additions platted by plaintiff with the expectation that he could use a private road in connection therewith, where he made no inquiry of defendants, the owners of the road, and relied on no statements made by them, would not entitle him to injunctive relief against them on their closing the road to him.

Appeal from Monroe; Root (Jesse H.), J.    Submitted June 6, 1923.    (Docket No. 35.)    Decided July 19, 1923.   Rehearing denied October 1, 1923.

Bill by William E. Reno against Anthony Johnson and others to enjoin the closing of a highway.    Defendants filed a cross-bill to enjoin a trespass.    From a decree for defendants, plaintiff appeals.    Affirmed.

*George S. Wright* and *C. C. Golden* (*Charles A. Thatcher,* of counsel), for plaintiff.

*Oliver J. Golden* (*Willis Baldwin,* of counsel), for defendants.

FELLOWS, J.    In the township of Erie, Monroe county, is an east and west improved highway running

down to Lake Erie known as the Lakeside road. At the shore and on the north side of the highway is a summer resort called Lakeside. In 1908 the Cove Bathing Beach Company acquired land on the south side abutting on the lake from Paul Dussia, who had before that conducted a summer resort with the usual attractions. The property was platted by the company under the name of Lakewood plat.

In the following year it was re-platted under the name of Lakewood replat. By this plat certain streets, including Lakewood road (sometimes called in the record Lakewood avenue) running north and south, were dedicated to the public. ˙ Later Burns addition adjoining Lakewood replat was platted and there was also platted a small plat called Typha. The Cove Bathing Beach Company sold out all its lots and was dissolved. Some 154 summer cottages have been built on these plats and nearly a thousand people spend their summers there. The deeds given on all the plats contain many restrictions appropriate to a summer colony. The residents of these three plats maintain a voluntary association, municipal in character, and although not incorporated it is called Lakewood village. By assessments over $25,000 has been raised to install water works, electric lights, sewerage systems, for the improvement of its streets and other purposes, over $1,400 being used in constructing and maintaining Lakewood road. Defendants are the officers of such voluntary association.

Immediately south of the Burns addition is the Reno addition, platted in 1919, and south of that is the Venice addition platted in 1920. Plaintiff is interested in the two latter additions but owns no lots in the other three. Upon defendants' attempt to close Lakewood road to plaintiff and on July 10, 1920, he filed this bill for injunctive relief, claiming the right to use the street as a public street by dedication

and acceptance by user, and its use by the public for the prescriptive period.　He also makes claim of estoppel.　Defendants concede the dedication but claim there has never been an acceptance by public authorities, and no such user either for the statutory period or for any lesser period as would make the street a public highway, or such as would give plaintiff any equities.　Upon the hearing a large number of witnesses were sworn on both sides.　In a carefully prepared opinion the trial judge found the facts to be with the defendants and upon their cross-bill granted them affirmative relief.

The authorities called to our attention by both counsel have been examined.　The Michigan cases will be found in the margin[1].　But under the facts as we find them we do not think there are any intricate questions of law involved.　The record shows undisputably that the dedication of the street was not accepted by the public authorities and that no public money has been expended in its construction or maintenance.　The trial judge found, and we agree with

[1]*Baker* v. *Johnston*, 21 Mich. 319; *Potter* v. *Safford*, 50 Mich. 46; *Adams* v. *Iron Cliffs Co.*, 78 Mich. 271 (18 Am. St. Rep. 441); *Chapman* v. *City of Sault Ste. Marie*, 146 Mich. 23; *Village of Grosse Pointe Shores* v. *Holmes*, 196 Mich. 183; *Galinski* v. *City of Detroit*, 193 Mich. 184; *Crosby* v. *City of Greenville*, 183 Mich. 452; *Vance* v. *Village of Pewamo*, 161 Mich. 528; *Stickley* v. *Township of Sodus*, 131 Mich. 510 (59 L. R. A. 287); *Karrer* v. *Berry*, 44 Mich. 391; *Bumpus* v. *Miller*, 4 Mich. 159; *Campau* v. *City of Detroit*, 104 Mich. 560; *Ellsworth* v. *City of Grand Rapids*, 27 Mich. 249; *White* v. *Smith*, 37 Mich. 291; *Neal* v. *Gilmore*, 141 Mich. 519; *Smith* v. *Lock*, 18 Mich. 56; *City of Detroit* v. *Railroad Co.*, 23 Mich. 173; *Hinckley* v. *Dennison*, 169 Mich. 361; *Village of Grandville* v. *Jenison*, 84 Mich. 54; *Gardner* v. *Mason*, 130 Mich. 436; *South Branch Ranch Co.* v. *Emery*, 191 Mich. 188; *Weihe* v. *Macatawa Resort Co.*, 198 Mich. 334; *St. Cecelia Society* v. *Service Co.*, 213 Mich. 569; *Brown* v. *Township of Byron*, 189 Mich. 584; *Petit* v. *Railroad Co.*, 119 Mich. 492 (75 Am. St. Rep. 417).

224—Mich.—2.

him, that Lakewood road was not established and graded until the fall of 1912. At this time some trees were cut down, the stumps were blasted, the road laid out, and a gate installed at its entrance. This gate has not been kept in place during the summer months when the large number of summer residents have occasion to use the road but it has at other times. Signs were put up stating that Lakewood was "private grounds" and warning the public to "keep out." And while numerous witnesses give negative testimony that they did not see these signs, the positive testimony shows that they were there. The voluntary association hired a watchman and instructed him to warn the public to keep out, that the grounds were private grounds. Hucksters, grocerymen, ice-men and others supplying the needs of the summer colony used the streets; visitors at the cottages came and went and no doubt some of the general public passed over the streets during the summer months. But even this use, limited as it was to the summer months and limited even then to a comparative few, did not continue for the statutory period. 1 Comp. Laws 1915, § 4307. Nor do we agree that the unaccepted dedication of land for a highway alone constitutes it a highway "regularly established in pursuance of existing law" within the purview of this statute. That the proper construction of this statute is no longer an open question was pointed out in *South Branch Ranch Co.* v. *Emery*, 191 Mich. 188, where this court held (quoting the syllabus) :

"A road which at first was used as a winding path along a water course and was traveled by the public for over 10 years as a drive for general use, but not accepted by any unequivocal act of the authorities within the 10-year period, as by improving or exercising control over it, was not a highway, within the meaning of the statute, by adverse user."

The testimony shows that while the premises were owned by Dussia and his predecessors, fishermen, hunters, parties hauling sand and others passed over the land. The road used for such purpose changed from year to year as the contour of the beach changed by the wash of the lake. At no time was it on the line of the present road. While Dussia was running his resort his patrons doubtless wandered at will over the premises. The use of other and different portions of the premises may not be tacked on to the use of Lakewood road to make up the statutory period. In *St. Cecelia Society* v. *Service Co.*, 213 Mich. 569, where an easement was involved, it was said:

"The elements necessary to give rise to a prescriptive right are the same as those of title by adverse possession, with the exception that it does not have to be exclusive."

Manifestly the adverse use or possession of one piece of property even for the statutory period would not give a prescriptive right to the use or possession of another piece of property. In *Bumpus* v. *Miller*, 4 Mich. 159, there was a change of the traveled portion of the road, but both the old and new road were within the four rods width of the road. That case is not applicable to the facts of the instant case.

At one time a subscription paper was circulated and voluntary contributions made to improve Lakewood road. Three persons owning property in Reno and other additions outside of Lakewood village contributed $15. They are not here complaining and doubtless feel that they have been compensated for their small contributions by the use already had of the road. We are unable to perceive how their contributions can inure to the benefit of this plaintiff. He made no contributions either voluntarily or as a lot owner in Lakewood village, and it should be again

pointed out that this is not a case of a lot owner who purchased a lot in a subdivision in reliance upon the dedicated streets appearing on the plat.

Plaintiff's counsel with much earnestness in both briefs filed by them contend that their client has expended several thousand dollars on the additions platted by him and that defendants are estopped from interfering with plaintiff's use of Lakewood road. Laying aside the question of acquiring an interest in land by estoppel, we are not persuaded that plaintiff's equities are at all superior to those of the defendants. He does not claim in his testimony that he relied on the recorded plat and if he did he was bound to know that dedication alone did not make Lakewood road a public highway. His first addition, Reno, was not platted until the year before this suit was instituted and Venice but a few months before. He made no inquiry of defendants and relied on no statements made by them. They had before this fitted up their summer village at great expense and plaintiff doubtless expected to take advantage of their expenditures in selling his lots. Defendants and those whom they represent have built their cottages and spent thousands of dollars in making the place one for rest during the summer months away from the public with its annoyances. They have done practically everything possible to preserve the privacy of their summer village. They should not be disturbed in it.

The decree is affirmed, with costs.

WIEST, C. J., and McDONALD, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.