## VILLAGE OF BELLAIRE v. PANKOP

1. HIGHWAYS—PUBLIC ROAD—ACCEPTANCE—QUESTION OF FACT.
   Whether or not disputed land, allegedly a public road, was ever public, or whether or not disputed land was ever accepted by public authorities are questions for the trier of fact.

2. HIGHWAYS—PUBLIC ROAD—DEDICATION—ACCEPTANCE.
   A private road becomes public either by public use or by the landowner's dedication of the road and an acceptance of it by public authorities; a private road becomes public by use where the public uses it openly and notoriously for ten years and the public use is exclusive and is prohibitive of a use in a manner inconsistent with a highway.

REFERENCES FOR POINTS IN HEADNOTES
[1] 23 Am Jur 2d, Dedication §§ 41, 46.
[2] 23 Am Jur 2d, Dedication §§ 28, 29.
   39 Am Jur 2d, Highways, Streets, and Bridges §§ 25–31.
[3] 23 Am Jur 2d, Dedication § 28.
   39 Am Jur 2d, Highways, Streets, and Bridges § 26.
[4] 23 Am Jur 2d, Dedication § 18 et seq.

3. HIGHWAYS—PUBLIC ROAD—PUBLIC USE—NOTORIOUS USE.

  The public's mere use of a private road does not alter its private character; the public use of a private road, to convert it into a public road by use, must be so open and notorious that the landowner is put on notice of the public's rights in the land.

4. HIGHWAYS—PUBLIC ROAD—COMMON-LAW DEDICATION—LANDOWNER'S REQUEST.

  A landowner's request to a highway commission to create a highway on the owner's property is a sufficient showing of intent to constitute a common-law dedication of the highway.

Appeal from Antrim, Charles L. Brown, J. Submitted Division 3 October 5, 1971, at Marquette. (Docket No. 10011.) Decided November 22, 1971. Leave to appeal denied, 386 Mich 786.

Complaint by Village of Bellaire, Township of Forest Home, and Antrim County Road Commission against Edward F. Pankop, Alma M. Pankop, Harvey Ferstle, and Dora Ferstle to enjoin defendants from barricading a portion of a public road. Judgment for defendants. Plaintiffs appeal. Affirmed.

*Harry T. Cook (Charles H. Menmuir, of counsel),* for plaintiffs.

*Zerafa & Zerafa,* for defendants.

Before: FITZGERALD, P. J., and BRONSON and T. M. BURNS, JJ.

BRONSON, J. Plaintiffs brought this action to enjoin defendant property owners from barricading a portion of an alleged public road in the Village of Bellaire, Antrim County, Michigan.

Defendants the Edward Pankops own property, purchased in portions in 1959 and 1966 from one Otto Holtz, which is located east of the railroad

tracks and adjacent to the Intermediate River on the east. The property lies south of, and adjacent to, the north 1/8 line, section 19, which is an extension of the center line of Fourth Street, running east and west, in the Village of Bellaire. North of, and adjacent to, the north 1/8 line is the property of the Harvey Ferstles, also defendants herein, which was purchased in 1961. In the area immediately east of the railroad tracks and south of the 1/8 line, excluding the Pankop property, is the Holtz Green Acres Subdivision. The 1/8 line is the center of the disputed strip. The strip is 33 feet wide on either side of the 1/8 line. It runs from the river west to approximately the eastern edge of Green Acres Road, a road running off of Fourth Street, through the Green Acres Subdivision, in a north-south direction. The disputed strip, from the river, is approximately 175 feet long. The Ferstles allegedly own the 33 feet north of the 1/8 line and the Pankops allegedly own the 33 feet south of the line.

In 1894, on the application of eight freeholders, the then Commissioner of Highways of Forest Home Township in Antrim County agreed to lay out a highway described in the township record book which was purportedly the road in question. It appears that no action was ever taken by the township board or by the county road commission.

The next action regarding the disputed strip seems to have occurred on March 26, 1940, when the Antrim County Board of Road Commissioners resolved in part as follows:

"Be it further resolved that the Board of County Road Commissioners of the County of Antrim, Michigan does hereby certify that the roads, streets and highways shown in yellow color on the said attached maps, No 1 to 29, inclusive, were as of July 1, 1939

county roads taken over as such by the Board of County Road Commissioners of the County of Antrim, Michigan, prior to September 17, 1931."

The road in question purportedly was among those shown in yellow on the map accompanying the certification resolution.

Witnesses for the plaintiffs testified as to a lack of knowledge as to whether work had been performed on the disputed strip; that a "public access" sign had been placed on the road near the strip within the past few years; and that a privately-owned bridge had, at one time, connected the disputed strip with the east bank of the river and had years ago been used for hauling timber, and for swimming and diving. There was further testimony that boats were kept at the end of the road and that some large trees in the right of way had constituted a turnaround for autos using the road. A foreman of the county road commission testified as to doing some work in the disputed area. Another employee only remembered doing snow removal.

Some of defendants' witnesses testified to the absence of a road down to the river and to the absence of work in the area by public authorities. Other witnesses, scuba divers, testified that the only evidence of any bridge in the area was about a quarter mile south of that in question. This is in conformity with a 1910 county plat book which shows that such a bridge existed. The Pankops' predecessor in title testified that he had retained title of the strip in question until 1966 because of his desire to plat the Green Acres Subdivision and that when he submitted the plat it was held up because the road in question was shown as a public rather than a private road. He further testified that he submitted a deed to this property to the village which was refused for the same reason.

The trial judge found for the defendants. The basis of his opinion was that the strip in question had never been a public road. The correctness of that decision is the only question for this Court on appeal.

Plaintiffs argue that the trial court erred in holding that the road in question was abandoned by public authorities and that it is not necessary that the disputed strip be maintained as other county roads to remain public, citing *Neal* v. *Gilmore* (1905), 141 Mich 519; *Crosby* v. *City of Greenville* (1914), 183 Mich 452; *In re Vacation of Cara Avenue* (1957), 350 Mich 283.

Defendants counter this by arguing that the lower court decision was based on title never resting in plaintiffs rather than on abandonment. *Missaukee Lakes Land Company* v. *Missaukee County Road Commission* (1952), 333 Mich 372.

Whether the disputed strip was ever a public road which could be abandoned is the critical question in this case. The trial judge, in his supplemental opinion, ruled that:

"This court merely declined to confirm the road to be a public road. In fact, this court simply held that the plaintiffs had not proven it to be a public road, and this court must again so find and so rule."

The basis of the lower court decision clearly was that the road was never public. This is a question for the trier of fact. *Alton* v. *Meeuwenberg* (1896), 108 Mich 629.

For a road to become public there must be either a highway by user or a dedication by the landowner and an acceptance on behalf of the public. *Alton* v. *Meeuwenberg, supra.* To constitute a highway by user there must be open and notorious use for ten

years by the public generally such that its public use is exclusive and prohibits a use in a manner inconsistent with a highway.  Mere use by the public, however, does not alter the character of a private road.  *Missaukee Lakes Land Company, supra.* That use must be so open and notorious that it puts the landowner on notice of the public's rights in the land.  There is no evidence of such use here.

The other method of creating a highway is by dedication and acceptance.  In *DeFlyer* v. *Oceana County Road Commissioners* (1965), 374 Mich 397, the Michigan Supreme Court held that a landowner's request to a highway commissioner to create a highway was a sufficient showing of intent to constitute a common-law dedication.  Thus, in the instant case, the 1894 application of eight freeholders did constitute a common-law dedication.  Whether or not there was an acceptance by public authorities, however, was a question for the trier of fact, *Neal* v. *Gilmore, supra.*  In the instant case there appears to be ample evidence to support the trial judge's determination that there was no acceptance and that the disputed strip was never a public way.

In *Missaukee Lakes Land Company, supra,* pp 376–378, the Court considered many of the factors present in the instant case and made the following findings which are particularly applicable here:

"No particular importance can be attached to the action of the county road commission in certifying the roads in question to the State highway commissioner * * * .  If the Dyer lake road was a private road of the plaintiff, its character could not have been changed to a public highway by said action of the county road commission.

\* \* \*

"(2) Considerable importance was attached in the trial court to a petition in 1947 or 1948 addressed to

the county road commission and the township boards of Caldwell and Lake townships, indicating it was signed by 9 property owners (including directors of the plaintiff) and asking that 3 designated roads on plaintiff's property (including the Dyer lake road) be closed. No proceedings were had on the petition and *it was never acted upon by the township boards or the county road commission.* The reason for such inaction does not appear in the record. Defendants claim that it now estops the plaintiff from claiming these roads are private roads. Regardless of the probative value of the petition, it does not operate as an estoppel of the plaintiff's claim that the roads are private, or to change their character to public roads.

\* \* \*

"(3) The roads in question had been used by the public. The county road commission and the State conservation commission occasionally did repair and maintenance work on the roads in question—mostly other than the Dyer lake road. No doubt these are elements to consider in determining whether the roads (and particularly the Dyer lake road) were private or public highways.

\* \* \*

"Plaintiff established at least a prima facie case to claim private ownership by proving title and possession. There are no public records to the contrary. \* \* \* The defendants called witnesses to show that they had used the roads and trails for various purposes without objection by plaintiff. The testimony also shows that the plaintiff took means to exclude the public. \* \* \* The use made by the public under these circumstances does not change the character of private roads to public highways.

" 'A mere permissive use of a private road by the general public, however long continued, will not make it a public highway.' " (Emphasis supplied.)

This Court will not disturb findings of the trial court unless clearly erroneous. *Grand Rapids Asphalt Paving Company* v. *City of Wyoming* (1971), 29 Mich App 474.

Affirmed.

All concurred.