BEULAH HOAGLAND APPLETON QUALIFIED PERSONAL RESIDENCE
TRUST v EMMET COUNTY ROAD COMMISSION

Docket No. 204409. Submitted December 2, 1998, at Lansing. Decided July
    13, 1999, at 9:05 A.M.

The Beulah Hoagland Appleton Qualified Personal Residence Trust
    and others brought an action in the Charlevoix Circuit Court
    against the Emmet and Charlevoix County Road Commissions,
    seeking to quiet title to a strip of the plaintiffs' property that the
    defendants alleged was a public road. The court, Richard M. Pajtas,
    J., granted summary disposition in favor of the defendants, finding
    that the undisputed evidence and "common sense" indicated that
    the disputed strip was a road. The plaintiffs appealed.

    The Court of Appeals *held*:

    1. The plaintiffs presented sufficient prima facie evidence that
    they did acquire and now do possess some interest, legal or equita-
    ble, in the property. Therefore, in order for summary disposition in
    favor of the defendants to be appropriate, the defendants had to
    show as a matter of law that they held superior title.

    2. The defendants did not establish that they had acquired own-
    ership of the property pursuant to any of the accepted methods
    whereby the property would become public property. The defend-
    ants failed to show that the property was legally established as a
    public road. The order of summary disposition must be reversed
    and the matter must be remanded for entry of an order of summary
    disposition in favor of the plaintiffs.

    3. The court erred in finding that the historical maps, surveys,
    affidavits, and photographs provided by the defendants docu-
    mented the creation of a public highway along the disputed strip of
    land. Case law does not support the defendants' suggestion that a
    commonsense notion regarding logical road placement is sufficient
    to vest the counties with public highway ownership of the property.
    The defendants failed to show the correctness or accuracy of the
    belief of some people that the disputed property constituted a pub-
    lic highway.

    Reversed and remanded.

1. QUIETING TITLE — BURDEN OF PROOF.

> The plaintiffs in an action to quiet title have the burden of proof and must present a prima facie case of title; the defendants then have the burden of proving superior right or title in themselves.

2. HIGHWAYS — PUBLIC PROPERTY.

> A road generally becomes public property in one of three ways: there must be a statutory dedication and an acceptance on behalf of the public, a common-law dedication and acceptance, or a finding of highway by public user.

3. HIGHWAYS — LAND DIVISION ACT — PUBLIC PROPERTY.

> Two elements are required for a road to become public property pursuant to a statutory dedication under the Land Division Act: there must be a recorded plat designating the areas for public use, evidencing a clear intent by the plat proprietor to dedicate those areas to public use, and acceptance by the proper public authority; public acceptance must be timely and disclosed through a manifest act by the public authority either formally confirming or accepting the dedication and ordering the opening of the road, or by exercising authority over it in some of the ordinary ways of improvement or regulation (MCL 560.101 *et seq.*; MSA 26.430[101] *et seq.*).

4. DEDICATION — COMMON-LAW DEDICATION — PUBLIC PROPERTY.

> A valid common-law dedication of land for a public purpose requires intent by the property owners to offer the land for public use, an acceptance of the offer by public officials, maintenance of the road by public officials, and use by the public generally.

5. HIGHWAYS — HIGHWAY BY USER.

> The highway by user statute requires four elements for the establishment of a public highway: a defined line; that the highway was used and worked on by public authorities; public travel and use for ten consecutive years without interruption; and open, notorious, and exclusive public use (MCL 221.20; MSA 9.21).

*Beier Howlett* (by *Lawrence R. Ternan*), for the plaintiffs.

*M. Carol Bambery*, for the defendants.

Before: GAGE, P.J., and MACKENZIE and WHITE, JJ.

GAGE, P.J. In this action to quiet title, plaintiffs appeal as of right the trial court's grant of summary

disposition to defendants pursuant to MCR 2.116(C)(4) and (10). We reverse and remand.

I

FACTS AND PROCEEDINGS

The plaintiffs in this case are Beulah Hoagland Appleton, the Beulah Hoagland Appleton Qualified Personal Residence Trust, and the Walloon Lake Country Club. The contested property is a 302.5-foot-long, 66-foot-wide strip of land, the center line of which is the border between Emmet and Charlevoix Counties. Plaintiff Beulah Hoagland Appleton Qualified Personal Residence Trust (the trust) holds record title to the largest portion of this land. Plaintiff Beulah Hoagland Appleton (Appleton) is the trust's settlor and occupant of lands located both north and south of the county line, including the disputed strip of land. According to plaintiffs' first amended complaint, plaintiff Walloon Lake Country Club is the record titleholder to approximately twenty-six feet of the disputed strip of land located in Charlevoix County, and holds an easement in the east seventy-five feet of the land lying south of the county line. Bear River Road runs east and west toward the east side of Walloon Lake, and forms a "T" intersection with Country Club Road, which runs north and south on the east side of the lake.

In November 1996, defendants, the Charlevoix and Emmet County Road Commissions each separately ordered that Appleton remove a fence running perpendicular to the county line across the disputed property, which fence Appleton averred her father installed circa 1940, on the basis that the strip of land

constituted a public highway, specifically a portion of
Bear River Road extending west to Walloon Lake
from the point where Bear River Road intersects with
Country Club Road.[1] The following month, plaintiffs
filed the instant suit seeking to quiet title to the dis-
puted strip of land. Plaintiffs alleged that the disputed
property had never been maintained, dedicated, or
otherwise established as a public highway, that they
held record title to the property and had openly, noto-
riously, and exclusively occupied it for sixty-eight
years, and that therefore they possessed the superior
interest in the property. Plaintiffs alternatively
claimed that even if defendants had ever possessed
some interest in the strip of land, they had abandoned
it. As a further alternative argument, plaintiffs
claimed that if it was determined that a public road
existed, its width would be limited by law to that
width actually utilized for road purposes.

Defendants and plaintiffs both moved for summary
disposition. The trial court granted summary disposi-
tion to defendants pursuant to MCR 2.116(C)(10),
finding that undisputed evidence and "common
sense" indicated that Bear River Road ran to the edge
of Walloon Lake, and pursuant to MCR 2.116(C)(4),
finding that it did not have jurisdiction over plaintiffs'
claim that defendants had abandoned their interests
in the strip of land because it was a county road sub-
ject to the exclusive jurisdiction of the county road
commissions.

---

[1] Although we located no determinative explanation of defendants'
motivation in seeking to open Bear Creek Road as a public highway
extending to the shore of Walloon Lake, the record reflects that in 1983
the Charlevoix County Road Commission had received complaints con-
cerning blocked access to the lake at the disputed strip of property.

II

ANALYSIS

A. NATURE OF THE CASE

In an action to quiet title, the plaintiffs have the burden of proof and must make out a prima facie case of title. *Stinebaugh v Bristol,* 132 Mich App 311, 316; 347 NW2d 219 (1984). If the plaintiffs make out a prima facie case, the defendants then have the burden of proving superior right or title in themselves. *Boekeloo v Kuschinski,* 117 Mich App 619, 629; 324 NW2d 104 (1982). Actions to quiet title are equitable in nature and are reviewed de novo by this Court. *Dobie v Morrison,* 227 Mich App 536, 538; 575 NW2d 817 (1998). We also review the trial court's grant of summary disposition de novo. *Spiek v Dep't of Transportation,* 456 Mich 331, 337; 572 NW2d 201 (1998). In reviewing a grant of summary disposition pursuant to MCR 2.116(C)(4) or (10), we consider the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted to determine whether the defendant was entitled to judgment as a matter of law or whether the affidavits and other proofs show that there was no genuine issue of material fact to warrant a trial. *Id.,* *Walker v Johnson & Johnson Vision Products, Inc,* 217 Mich App 705, 708; 552 NW2d 679 (1996).

Plaintiffs presented sufficient prima facie evidence that they did acquire and now do possess some interest, legal or equitable, in the property. *Calhoun v Calhoun,* 361 Mich 698, 700; 106 NW2d 158 (1960). Plaintiffs described the chain of title through which they

claim ownership of the disputed strip of property.[2]
Appleton's affidavit stated that while she had been on
the property near Walloon Lake every year since 1929,
she had never witnessed any utilization or mainte-
nance of the disputed property as a public highway.
She further alleged that since 1929 trees had grown
within the disputed property, some of which she
replanted in the 1940s, and that she installed a closed
gate that has traversed the disputed property since
1983. Appleton's son also provided an affidavit in
which he alleged he had never witnessed evidence
that a public right of way had ever existed within the
disputed property. Photographs of the disputed prop-
erty taken in 1941 and 1997 and attached to his affida-
vit show mature trees growing within the disputed
property. Because this evidence establishes a prima
facie case of plaintiffs' interest in the property, for
summary disposition in favor of defendants to be
appropriate, defendants must have then illustrated
that as a matter of law they held superior title.

### B. SUFFICIENCY OF DEFENDANTS' EVIDENCE REGARDING ESTAB-LISHMENT OF A PUBLIC ROAD

Plaintiffs first contend that the trial court erred in
granting defendants summary disposition because
defendants' evidence was insufficient to establish the
creation of a public highway. The trial court relied on

---

[2] Plaintiffs did not themselves produce as evidence the deeds convey-
ing their interests. Defendants provided these to the court, however, alleg-
ing that language within the deeds described the disputed strip of prop-
erty as a public highway and exempted this highway from the deeds'
transfers of property. In its opinion and order granting defendants sum-
mary disposition, the trial court did not acknowledge whether any consid-
eration of these deeds had entered into its decision.

"common sense" and the following evidence in concluding that the property was a public highway:

> The plaintiffs do not dispute that various maps and surveys depict Bear River Road terminating at the water's edge. Obviously, the townline and county line continue to the water's edge. It would seem that to terminate the road 300' from the water defies common sense, particularly in view of historical usage of bodies of water at road ends. Moreover, there is undisputed direct evidence that supports that conclusion.
>
> Bear River Road was originally laid out by the federal General Land Office when the territory was divided into townships when the government, rather than private individuals, owned the adjacent parcels.[3] The earliest recorded plat map, dated 1901, shows Bear River Road as an intercounty road dividing Charlevoix and Emmet Counties to the water's edge of Walloon Lake. The defendants have submitted a 1902 photograph which shows Bear River Road as a dirt trail at the intersection of Howard and Bear River Roads.
>
> Plat maps for both Melrose and Bear Creek Townships, dated 1904, show Bear River Road going to the water's edge. A survey done in 1909 shows Bear River Road proceeding to the water's edge. This survey was commissioned by an adjoining landowner. A 1917 map shows the road terminating at the water's edge. Minutes from an April 20, 1925 joint road commission meeting reflect a resolution making Bear River Road a part of the county road system. It was

---

[3] While defendants theorized that the federal government in its original land patents must have established Bear River Road as running to the edge of Walloon Lake, defendants failed to provide any documentation supporting their theory. To the contrary, plaintiffs did provide the trial court with an affidavit of Mary Feindt, president of the Charlevoix Abstract and Engineering Company, who asserted that she had inspected the existing records of both Emmet County and Charlevoix County regarding the original federal grants of the lands including the disputed property. According to Feindt, the descriptions of the lands conveyed by the federal patents did not identify or exempt any land along the county line as a public highway.

known as County Line Road at that time. A county road tax was assessed on the road. The 1931 McNitt map shows Bear River Road as gravel and certified to the water's edge. A 1940 General Highway Map shows the road to the water's edge and a 1938 aerial map purports to show the same thing.

A 1949 declaration of dedicated roads includes Bear River Road to the lake. A 1951 map of the Charlevoix County Road System denotes which areas each county road commission is responsible for regarding maintenance and upkeep.[4] It show [sic] the road to the water's edge. An aerial map from 1965 purports to show the road to the water and a 1987 survey recognizes and depicts Bear River Road continuing to the edge of the lake.

The nature and extent of usage of the road to the water is disputed by opposing affidavits. Hence, as to the usage issue there is a disputed question of fact. However, the determination of the nature and extent of usage of the road is unnecessary to the courts [sic] decision. Title to county roads cannot be adversely possessed.

Thus, the trial court found defendants' "historical evidence" sufficient to establish that the strip of land

---

[4] Plaintiffs produced another affidavit of Feindt, see, n 3 *supra*, that included 1959 and 1995 Charlevoix County road certification maps. Feindt alleged these maps indicated that in these respective years, the county had certified 0.588 and 0.59 miles of Bear River Road west of United States Highway 131 (US 131). Feindt explained that on the basis of property surveys of this area, she had calculated the distance between the center of US 131 and Country Club Drive as 3115.01 feet, very close to 0.59 miles (3115.20 feet). Feindt concluded that therefore the county certification did not include the disputed property. We note that although county road certification cannot create a public highway out of otherwise private property, *Pulleyblank v Mason Co Rd Comm*, 350 Mich 223, 230; 86 NW2d 309 (1957); *Missaukee Lakes Land Co v Missaukee Co Rd Comm*, 333 Mich 372, 375-376; 53 NW2d 297 (1952), and thus a conclusive determination regarding the extent of the county's road certification would not be dispositive of the instant ownership dispute, the trial court apparently improperly made a factual finding in the context of a motion for summary disposition under MCR 2.116(C)(10) when conflicting evidence existed. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994).

was a public highway and that plaintiffs did not acquire title because defendants had not relinquished jurisdiction or control over the road.

For a road to become public property, there generally must be a statutory dedication and an acceptance on behalf of the public, a common-law dedication and acceptance, or a finding of highway by public user. *Village of Bellaire v Pankop*, 37 Mich App 50, 54-55; 194 NW2d 379 (1971). For a statutory dedication under the Land Division Act, MCL 560.101 *et seq.*; MSA 26.430(101) *et seq.*, the well-established rule is that two elements are required: a recorded plat designating the areas for public use, evidencing a clear intent by the plat proprietor to dedicate those areas to public use, and acceptance by the proper public authority. *Kraus v Dep't of Commerce*, 451 Mich 420, 424; 547 NW2d 870 (1996). Public acceptance must be timely and must be disclosed through a manifest act by the public authority either formally confirming or accepting the dedication and ordering the opening of the street, or by exercising authority over it, in some of the ordinary ways of improvement or regulation. *Id.* Similarly, a valid common-law dedication of land for a public purpose requires (1) intent by the property owners to offer the land for public use, (2) an acceptance of the offer by the public officials and maintenance of the road by public officials, and (3) use by the public generally. *Bain v Fry*, 352 Mich 299, 305; 89 NW2d 485 (1958); *Boone v Antrim Co Bd of Rd Comm'rs*, 177 Mich App 688, 693; 442 NW2d 725 (1989). Finally, establishing a public highway pursuant to the highway by user statute, MCL 221.20; MSA 9.21, requires (1) a defined line, (2) that the road was used and worked on by public authori-

ties, (3) public travel and use for ten consecutive years without interruption, and (4) open, notorious, and exclusive public use. *Bain, supra.*

Defendants concede that they could not definitively establish that they had acquired ownership of the property pursuant to any of these accepted methods. They argue instead a novel theory that the trial court's grant of summary disposition was appropriate because the undisputed historical evidence they supplied demonstrated that the disputed strip of property was a public highway. According to defendants, their provision of historical maps, surveys, affidavits, and photographs regarding the condition and use of the disputed strip of property to establish title to the disputed strip was sufficient because the historical documents were the only available evidence reflecting their claim to the property. None of the maps, surveys, affidavits, or county records provided by defendants documents the creation of a public highway along the disputed strip of land. Nor do any of the cases cited by defendants in their brief on appeal support defendants' suggestion that a commonsense notion regarding logical road placement is sufficient to vest the counties with public highway ownership of property. Although defendants' evidence suggests that some people believed the disputed property constituted a public highway, defendants have produced nothing to illuminate the veracity of this belief. We simply may not conclude as a matter of law that defendants hold a superior interest in the disputed strip of land when defendants have supplied no evidence establishing their interest.

In essence, defendants are asking this Court to recognize a new basis on which to establish the creation

of a public highway. Defendants urge that we need not strictly hold them to the traditional methods of proving title, and that as a matter of public policy we ought to adopt an historical evidence approach to establishing interests in property, especially in cases like this in which other, more definitive, evidence is lacking. Defendants argue that public policies regarding recognition of section line roads and access to water[5] also support adoption of an historical evidence approach. However, defendants have otherwise provided us with absolutely no authority from Michigan or any foreign jurisdiction that supports their argument concerning an historical evidence approach. Furthermore, defendants' argument ignores the fundamental notion that a property owner should enjoy exclusive control over his land. By recognizing defendants' proposed new approach to establishing a public road over land that had previously been purchased as, or thought of as, private property, we would undermine the right to hold property to the exclusion of others. Michigan courts have long recognized that a landowner should have free and exclusive enjoyment of his property. *O'Connor v Resort Custom Builders, Inc*, 459 Mich 335, 343; 591 NW2d 216 (1999) ("[O]wners of land have broad freedom to make legal use of their property."); *City of Lansing v Edward Rose Realty, Inc*, 442 Mich 626, 642, n 27; 502 NW2d 638 (1993) ("A component of a private owner's property rights is the right to exclude others."), citing

---

[5] Although defendants do not support their public policy argument regarding lake access with any relevant Michigan statutory authority, the Legislature has recognized, in the context of abandoned road endings at a public body of water, the "overriding concern [of] retaining public access to a body of water." Senate Fiscal Agency Analysis, SB 715-717, July 9, 1996, p 1.

*Loretto v Teleprompter Manhattan CATV Corp,* 458
US 419, 435; 102 S Ct 3164; 73 L Ed 2d 868 (1982)
("The power to exclude has traditionally been consid-
ered one of the most treasured strands in an owner's
bundle of property rights."); *Vanderlip v Grand
Rapids,* 73 Mich 522, 533; 41 NW 677 (1889) ("The
right of exclusion or the right of complete possession
and enjoyment is one of the essential elements of
property in land."). Moreover, our adoption of defend-
ants' approach would result in the taking of private
property without just compensation in derogation of
the Michigan Constitution. Const 1963, art 10, § 2. We
decline to undermine property rights by adopting
defendants' proposal, and thus we reject historical
evidence as an independent means of establishing
rights in property.[6]

In light of our rejection of defendants' proposed
historical evidence approach, and defendants' conces-
sion that they could locate no other evidence tending
to show that the disputed strip of property was
legally established as a public road, no genuine issue
of material fact exists with respect to whether plain-
tiffs possess the superior interest in the property.
Because defendants cannot show that they have supe-
rior title, the trial court erred in granting defendants'
motion for summary disposition and denying plain-
tiffs' motion. *Stinebaugh, supra; Boekeloo, supra.*
Therefore, we remand to the trial court for entry of
an order granting plaintiffs summary disposition.[7]

---

[6] To the extent this opinion fails to address plaintiffs' argument that the
trial court made several incorrect factual findings, we conclude that, in
light of our decision to reverse the trial court's grant of summary disposi-
tion to defendants, we need not address these allegations.

[7] Given our conclusion that the trial court incorrectly granted defend-
ants summary disposition, we need not address plaintiffs' additional argu-

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. No taxable costs pursuant to MCR 7.219, a question of public policy being involved.

---

ment on appeal that the trial court incorrectly concluded it had no jurisdiction to determine plaintiffs' common-law abandonment claim.