*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

MATTHEW MAASDAM and LAURA
MAASDAM,

        Plaintiffs-Appellees,

v

PERI WEINGRAD,

        Defendant-Appellant.

UNPUBLISHED
July 14, 2022

No. 356310
Washtenaw Circuit Court
LC No. 20-001094-CH

---

Before: GLEICHER, C.J., and GADOLA and YATES, JJ.

PER CURIAM.

Defendant, Peri Weingrad, appeals as of right the trial court's order awarding summary disposition under MCR 2.116(C)(10) and a permanent injunction to Plaintiffs Matthew and Laura Maasdam. On appeal, defendant argues that the trial court lacked personal jurisdiction over her because she was not properly served with pleadings and papers. She also insists that the trial court erred when it granted summary disposition to plaintiffs, rather than to her. We disagree and affirm.

## I. FACTUAL BACKGROUND

This Court has heard the story lurking behind this appeal more than once before. In simple terms, defendant continues to defy several court orders establishing that she has no interest in the purportedly disputed property at 475 Huntington Drive in Ann Arbor, Michigan ("the Property"). In this case, she seeks to undermine yet another court order preventing her from asserting rights to the Property that she does not have.

Before exploring the details of this case, a layer of background is necessary to set the stage. In 2017, the trial court adjudicated a series of cases that resolved various interests in the Property, including defendant's. The trial court's order in those cases provides an illuminating summary of those proceedings and furnishes context for the current case. That order stated:

> Joel Weingrad died, leaving 3 adult children, Peri [the appellant in this case], Ari and Rachel. In September 2015 Peri filed by application to open an estate and requested to be appointed personal representative. Ari objected and requested

-1-

that he be appointed PR. Rachel has not participated in these proceedings. (For ease of reading the Court refers to the Weingrads by their first names, no disrespect intended)

The Court declined to appoint Peri, due to concerns about her pleadings and behavior in the guardianship and conservator files that shortly preceded Joel's death. The Court declined to appoint Ari, because of outstanding warrants he had in the state of Michigan. (He was residing in Florida). After a number of adjournments while the court waited fruitlessly for Ari to clean up his warrants, Attorney Constance Jones was appointed PR in February 2016.

In November 2016 Peri filed an action in Circuit Court. (16-1041 CH) That action requested foreclosure of a mortgage on a house that had been owned by Joel Weingrad. Peri said that as the holder of a $400,000 promissory note and mortgage she was entitled to foreclose on the property. Though there are various versions of the note, the note purports to show that Joel borrowed $400,000 from his parents in 1990. The note states, "If in the event payments are not made according to this note, the holder may foreclose without notice or take title in lieu of foreclosure . . . in the event of the death of Joel Weingrad prior to the satisfaction of this note, the house and the contents are hereby Deeded to the holder in full satisfaction of this note."

Even though it appears that Joel owed his parents $400,000, Peri states that as the holder of the note, she is entitled to enforce the terms of the note. Her initial petition contained no statutes (other than as to jurisdiction/venue) or case law that support her claim. She stated:

> JOEL WEINGRAD, deceased has breached his respective obligations under the MORTGAGE NOTE, among other things, failing to pay the indebtedness when due, and MS. WEINGRAD has been damaged as a proximate result of such breaches.

How she came to be the "holder" of the note is a twisted trail and not plead [sic] in her initial complaint.

The case was transferred to the Probate Court and this Court consolidated the cases under the DE file.

Peri has filed numerous motions, none of which were a motion to amend the initial complaint. However, in these numerous other motions she has presented additional theories on why she is entitled to foreclose on the mortgage and take possession of the house. Her request is opposed by creditor Barbara Roth and the personal representative. Barbara Roth loaned Joel $196,000 and has a lien on the house.

In other pleadings, Peri raised claims under the Uniform Commercial Code. Then for the first time, at her deposition in April 2017 produced a document that purported to show that in December 2014 she bought goods that were in a storage

unit for $350. The goods included boxes of documents that belonged to Sherwood Management and/or Joel. The $400,000 note/mortgage was later found in those boxes. So, Peri claimed that she had bought the $400,000 note/mortgage for $350. The sales document was signed by Joel Weingrad for Sherwood Management.

Just a month prior to that sale, in November of 2014, Peri filed petitions, asking to be appointed guardian and conservator for Joel, claiming that he lacked capacity to make or communicate informed decisions and that he was unable to handle his business affairs effectively because of diminished mental capacity. She was appointed temporary guardian and conservator for a short time. Joel moved/ went back to Florida and the petitions were dismissed by the Court, as Joel was not a resident of Washtenaw County.

An evidentiary hearing was held June 19, 2017. The only two documents that Peri presented were the $400,000 mortgage note from 1990 showing Joel borrowed $400,000 from his parents and the recorded mortgage. Peri was her own/ only witness at the hearing. There were suggestions that Joel did not pay the debt, that he did pay the debt, that his mother forgave the loan, that his mother did not forgive the loan, that the note was not dispersed as an asset after the death of Joel's mother. (The last of his parents to die) None of these propositions was proven by a preponderance of the evidence.

At the conclusion of the hearing, creditor Roth asked that post hearing briefs be written and that Peri put in writing what theories she was relying on. This was done and responses were filed.

In Peri's post evidentiary hearing brief she once again presented new legal theories and attached numerous documents that had not been entered at trial and had never been given to opposing counsel during discovery. The Court ignores these documents.

Peri's theory under the UCC, is that she is a "holder" of the mortgage note and entitled to enforce. Even if the court considered this theory as properly pled, Peri still fails under this theory as she is not a holder of the note, she did not become a holder of the note through negotiation, she did not acquire any right to enforce the instrument via "delivery" or the "shelter provision", issuance of the note does not grant enforcement rights to Peri.

Peri entered into negotiations with her father while he was in a compromised physical and mental state and while she was either still a court appointed fiduciary for her father, or 5 days after her appointment ended because of improper venue. She wrote "under penalty of perjury" that her father was in need of a guardian and conservator, was appointed temporary guardian and conservator yet still entered into a contract with him to purchase the mortgage note/ assets of Sherwood Management/Joel's assets. She does not prevail on the theory of having purchased the note.

For additional reasons stated in Roth's and PR's closing briefs, Peri's claim fails. Peri's initially pled theory fails for the reasons stated above and for the reasons contained in Roth's and PR's closing briefs. Peri has failed to show by the lowest standard of preponderance of the evidence that she is entitled to enforce the terms of the mortgage/note.

IT IS ORDERED:

Peri Weingrad has no right to enforce the Note and Mortgage given by decedent, Joel Weingrad, to his parents. Her possession of the original mortgage note does not entitle her to enforce it or to acquire any other rights as a result of it.

Defendant thereafter filed multiple appeals. Eventually, this Court issued two unpublished opinions affirming various orders of the trial court. See *Weingrad v Jones*, unpublished per curiam opinion of the Court of Appeals, issued October 17, 2019 (Docket No. 342873); see also *In re Weingrad Estate*, unpublished per curiam opinion of the Court of Appeals, issued December 17, 2019 (Docket Nos. 343398, 345939).

On October 29, 2020, plaintiffs—who had nothing whatsoever to do with the internecine warfare in the Weingrad family—filed the complaint in this case alleging that, in November 2017, they bought the Property in reliance on the trial court's orders stating it was being purchased "free and clear of all liens." The complaint alleged that plaintiffs had "gone to great effort and expense rehabilitating the once condemned home." Yet, the complaint alleged that, on January 27, 2020, defendant "recorded an Affidavit of Default and Entitlement to Enforce Mortgage Nonjudicially" with the Washtenaw County Register of Deeds. In that affidavit, defendant averred that she owned the debt secured by her father's mortgage to his parents, that the mortgage was in default, and that she intended to foreclose the mortgage. That same day, defendant recorded a December 21, 2014, "security agreement" purporting to convey the mortgage from Sherwood Management (her father's company) to herself. Many months later, on October 14, 2020, defendant "caused to be posted on the Property a Notice of Foreclosure by Advisement, which states that $1,566,465.75 (nearly four times the principal of $400,000 Note) is now due on the 1990 Mortgage." The notice of foreclosure stated that defendant planned to sell the Property at auction on November 5, 2020, in order to satisfy the mortgage. Plaintiffs' complaint alleged that, on October 23, 2020, defendant "recorded a Notice of Owner's Intent to Preserve a Right of Termination," "in which she claims that she owns an interest in the Property under the 1990 Mortgage." Defendant "also recorded an Affidavit of Owner's Renewal of Mortgage," "in which she falsely attested that the 1990 Mortgage is undischarged and unreleased, and that she holds title to the debt it secures."

In Count One of their complaint, plaintiffs requested an order quieting title to the Property. They also sought a temporary restraining order (TRO) enjoining the sheriff's sale defendant had scheduled and prohibiting defendant from selling the Property. They also requested a permanent injunction barring defendant from claiming any interest in the Property. In Count Two, plaintiffs alleged slander of title, requesting costs related to bringing this action along with the same relief requested in Count One. Plaintiffs attached to their complaint documents reflecting information about the chain of title to the Property, their deed to the Property, the 1990 mortgage note, various trial-court orders concerning the Property, and more.

Almost as soon as the plaintiffs filed their complaint, the trial court (the same judge who presided over the 2017 proceedings) issued a TRO enjoining defendant and those acting in concert with her from conducting a sheriff's sale or otherwise selling the Property at auction. In addition, the trial court ordered defendant to show cause why a preliminary injunction should not be entered. But the plaintiffs' latest adventure with defendant was just beginning. Plaintiffs faced difficulties effectuating personal service of the various documents on defendant, whose only known address (based on then-ongoing federal litigation between the parties and defendant's own documents) was a business that apparently offers a kind of "mailbox" to its customers. So, on November 4, 2020, plaintiffs moved for alternate service of process, setting forth affidavits detailing their attempts to effectuate service. The trial court promptly granted that motion, stating "that Service of Process on Defendant Peri Weingrad shall be made by first class mail to Peri Weingrad at 317 S. Division Street PMB 11, Ann Arbor, MI 48104, and by email to" defendant's last known e-mail addresses. The next day, plaintiffs filed affidavits and a certificate of service stating that they served defendant by first-class mail and e-mail with the complaint, a summons, the motion for TRO and preliminary injunction, the order granting the TRO, the motion for alternate service of process, and the order authorizing alternate service of process.

On November 9, 2020, the day of the preliminary injunction hearing, defendant filed an appearance and other documents. Her notice of appearance stated that she has "rights and duties as set forth in MCL 440.9601 *et seq.* and MCL 440.9207. See MCL 440.9601(2)." She also filed an "Objection and Motion" to the order granting a TRO, noting that she "discovered" (instead of being served with) the ex parte order and stating that she objected to "all" provisions of that order. At the hearing, plaintiffs' counsel alleged that defendant had attempted to conduct a sheriff's sale in violation of the TRO. When she was prevented from doing so, she held a private sale and sold the Property to herself. Appearing at the hearing, defendant stated that her appearance was "solely for the purpose of denying that" the trial court "had the jurisdiction to compel my appearance today and to enter the temporary restraining order as it was entered." When asked by the trial court if she believed that she sold the Property to herself at a private sale, defendant dodged the question by explaining "that would be speculation as to what I would do in—in the future" and "I will take whatever action that seems appropriate to me." After a third, identical question, defendant finally stated that she believed that she had equitable title in the Property. Following brief testimony from Matthew Maasdam, the trial court granted a preliminary injunction in favor of plaintiffs.

In the wake of the trial court's issuance of a preliminary injunction, defendant filed several motions, including a motion for summary disposition on the basis of inadequate service of process, which the trial court denied. Plaintiffs moved for summary disposition under MCR 2.116(C)(10) on both counts set forth in the complaint. After a hearing, the trial court granted plaintiffs' motion as to both counts, issued a permanent injunction barring defendant from taking any action in regard to the Property, awarded sanctions to plaintiffs, and cautioned defendant that she would be held in criminal contempt if she violated any of the court's orders. Defendant now appeals the trial court's order granting summary disposition to plaintiffs on their quiet-title and slander-of-title claims.

## II. LEGAL ANALYSIS

### A. PERSONAL JURISDICTION AND SERVICE OF PROCESS

First, defendant appears to argue that the trial court's order is void because the trial court lacked personal jurisdiction over her due to a failure of service of process. This Court "reviews de novo the legal question whether a court possesses personal jurisdiction over a party." *WH Froh, Inc v Domanski*, 252 Mich App 220, 225; 651NW2d 470 (2002). Here, the trial court authorized substituted service. See MCR 2.105(J)(1). This Court reviews "for an abuse of discretion a trial court's decision to permit or deny substituted service." *Ickes v Korte*, 331 Mich App 436, 440; 951 NW2d 699, 702 (2020). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Id*.

A trial court "cannot adjudicate an in personam controversy without first having obtained jurisdiction over the defendant by service of process." *Lawrence M Clarke, Inc v Richco Constr, Inc*, 489 Mich 265, 274; 803 NW2d 151 (2011) (quotation marks and brackets omitted). "A court must obtain personal jurisdiction over a defendant in order to satisfy the due process requirement that a defendant be informed of an action by the best means available under the circumstances." *Id.* "Personal notice, however, is not necessary to satisfy due process requirements in all cases." *Id.* Under MCR 2.105(J)(1), " '[o]n a showing that service of process cannot reasonably be made as provided by [MCR 2.105], the court may by order permit service of process to be made in any other manner reasonably calculated to give the defendant actual notice of the proceedings and an opportunity to be heard.' " *Id.* The trial court expressly permitted this form of service. We find no abuse of discretion in the trial court's approval of substituted service. See *Ickes*, 331 Mich App at 440. Plaintiffs properly supported their motion for alternate service with affidavits detailing their efforts to personally serve defendant. They submitted affidavits establishing that defendant's only known address was neither her home nor her business. The affidavits stated that defendant ignored telephone calls and e-mails at numbers and accounts she had provided in other litigation. Under the circumstances, the trial court acted within its discretion when it authorized substituted service of process upon defendant.

More broadly, service of process in the manners prescribed by the trial court comported with the requirements of the governing long-arm statute and principles of due process. Defendant was present in the state when process was served and was domiciled in the state when process was served, so the trial court had "a sufficient basis of jurisdiction" over defendant "to render personal judgments" against defendant under the applicable long-arm statute. See MCL 600.701(1) & (2). With respect to due process, defendant identified her address in the "Notice of Foreclosure" as 317 S. Division PMB 11, Ann Arbor, MI, 48104, which was the address to which the trial court directed plaintiffs to provide substituted service. Additionally, the trial court's order required plaintiffs to serve process by e-mail to two separate addresses used by defendant. Beyond that, defendant filed an appearance in the action and personally appeared before the trial court for the purposes of filing and arguing motions. Although defendant claimed at times that she did so merely for the limited purpose of challenging personal jurisdiction, she appeared and argued against plaintiffs' motion for summary disposition on the merits. Thus, she waived any challenge to the trial court's personal

jurisdiction over her and to the adequacy of service of process.[1]  See *Nelson v McCormick*, 334 Mich 387, 389-390; 54 NW2d 694 (1952).

## B.  SUMMARY DISPOSITION: QUIET TITLE AND SLANDER OF TITLE

Defendant also contends that the trial court erred when it awarded summary disposition to plaintiffs under MCR 2.116(C)(10) on their quiet-title and slander-of-title claims.  She insists that the 2017 orders declaring that she has no right to the Property are open to challenge, and she argues that plaintiffs do not have title to the Property because they cannot challenge rights to the Property determined in the probate of her father's estate.  She also discusses at length several issues related to her parents' divorce.  Defendant's arguments are meritless.

This Court reviews "de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019).  Under MCR 2.116(C)(10), summary disposition should be granted "when there is no genuine issue of material fact." *Id.* at 160.  "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id.*  "The moving party must specifically identify the matters that have no disputed factual issues, and it has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence." *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 440; 814 NW2d 670 (2012).  In response, the "party opposing a motion under MCR 2.116(C)(10) may not rest upon the mere allegations or denials in [the] pleadings, but must by affidavit, deposition, admission, or other documentary evidence set forth specific facts showing that there is a genuine issue for trial." *McCormick v Auto Club Ins Ass'n*, 202 Mich App 233, 237; 507 NW2d 741 (1993).  If "the opposing party fails to come forward with evidence, beyond allegations or denials in the pleadings, to establish the existence of a material factual dispute, the motion is properly granted." *Id*.  "In an action to quiet title, the plaintiffs have the burden of proof and must make out a prima facie case of title." *Beulah Hoagland Appleton Qualified Personal Residence Trust v Emmet Co Rd Comm*, 236 Mich App 546, 550; 600 NW2d 698 (1999).  "If the plaintiffs make out a prima facie case, the defendants then have the burden of proving superior right or title in themselves." *Id.*  "Actions to quiet title are equitable in nature and are reviewed de novo by this Court." *Id.*

Moving for summary disposition on their quiet-title claim, plaintiffs presented a warranty deed establishing that they purchased the Property.  They also submitted documentation of a chain of title dating back more than 40 years.  This was sufficient to demonstrate that plaintiffs have an interest in the Property.  In response, defendant presented no evidence that she possesses superior title.  Indeed, she cannot do so.  The trial court's 2017 orders reflect that defendant possesses no claim to the Property and that the Property was sold free and clear of all liens.  Additionally, the equities favor plaintiffs:  they paid $405,000 for the Property in reliance on the trial court's 2017

---

[1] To the extent that defendant argues that the summons was expired when she was served with process, she is correct that the original summons reflected an expiration date of October 28, 2020.  Clearly, this is a typo.  The court clerk signed the summons on October 29, 2020—the day before the supposed expiration date reflected on the form.  A summons expires 91 days after it is issued.  MCR 2.102(D).  A corrected summons reflecting the correct expiration date of January 28, 2021, was issued on December 2, 2020.

orders. On the other hand, defendant advances a patently meritless claim that she bought the 1990 mortgage for $350 from her father (over whom she had a conservatorship at the time) and that she has the right to foreclose on the mortgage even though (1) unrebutted evidence in the probate case established that the 1990 mortgage had been satisfied, and (2) the trial court has repeatedly ruled (and this Court has affirmed) that defendant has no interest in the Property. Accordingly, summary disposition was appropriate on the plaintiffs' quiet-title claim. See *McCormick*, 202 Mich App at 237; see also *Beulah Hoagland Appleton Trust*, 236 Mich App at 550-551.

The same is true for plaintiffs' slander-of-title claim. In *Anton, Sowerby & Assoc v Mr C's Lake Orion, LLC*, 309 Mich App 535, 546-547; 872 NW2d 699 (2015), this Court summarized the law regarding slander of title this way:

> Claims for slander of title were recognized at common law "as a remedy for malicious publication of false statements that disparage a plaintiff's right in property." *B & B Investment Group v Gitler*, 229 Mich App 1, 8; 581 NW2d 17 (1998). "In Michigan, slander of title claims have both a common-law and statutory basis." *Id*. To establish either, a claimant must show falsity, malice, and special damages. *Id*; see also MCL 566.108.

> In *Wells Fargo Bank v Country Place Condo Ass'n*, 304 Mich App 582, 596; 848 NW2d 425 (2014), this Court provided the following guidance regarding the malice element:

>> The crucial element is malice. A slander of title claimant must show some act of express malice, which implies a desire or intention to injure. Malice may not be inferred merely from the filing of an invalid lien; the plaintiff must show that the defendant knowingly filed an invalid lien with the intent to cause the plaintiff injury. A plaintiff may not maintain a slander of title claim if the defendant's claim under the mortgage or lien was asserted in good faith upon probable cause or was prompted by a reasonable belief that the defendant had rights in the real estate in question . . . [Quotation marks, citations, and alterations omitted.]

> Given this guidance, the malice necessary for a slander-of-title action does not exist when the offending party's actions rest on a rational, yet incorrect, interpretation of law. See *id*. at 598.

> The claimant also must show that the alleged slander caused special damages. *B & B Investment Group*, 229 Mich App at 8. "[S]pecial damages . . . include litigation costs, impairment of vendibility, and loss of rent or interest." *Id*. at 9 (citations omitted). Attorney fees may be awarded pursuant to MCL 565.108 and are not limited to the time before the title cloud was removed. *Id*. at 11. Rather, the statute contemplates that attorney fees and costs may be awarded, in the court's discretion, for all expenses involved in the action. *Id*.

As we have explained, in 2017 and in successive orders in the years since, the trial court has ordered that defendant has no interest in the Property. As a part of the probate case governing Joel Weingrad's estate, the trial court ordered the Property sold free and clear of all liens. It has ordered that defendant has "no right to enforce the Note and Mortgage." Defendant was a party to the actions involving her father's estate; indeed, she appealed several rulings from those cases. In spite of this history, defendant published and recorded multiple documents purporting to enforce the rights she believes she still has in the Property. In fact, even after the trial court entered the TRO in this case and effectively halted the sheriff's sale of the Property, defendant submitted documentation that she held a private sale and purported to sell the Property to herself, demanding $1.6 million to redeem it. Finally, plaintiffs have suffered special injury and damages in the form of attorney fees and costs associated with defending themselves from defendant's absurd actions. Defendant presented no evidence rebutting plaintiffs' showing on these elements. Instead, she has continued to question the validity of the trial court's 2017 orders, and she has even presented new theories somehow related to her parents' divorce. Thus, the trial court properly granted summary disposition to plaintiffs on their slander-of-title claim. See *McCormick*, 202 Mich App at 237; see also *Anton, Sowerby & Assoc*, 309 Mich App at 546-547.

Affirmed. Having fully prevailed on appeal, plaintiffs may tax costs under MCR 7.219.

/s/ Elizabeth L. Gleicher
/s/ Michael F. Gadola
/s/ Christopher P. Yates