*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BUSINESS ENTREPRENEURS, LLC,

        Plaintiff/Counterdefendant-Appellant,

v

THE DOWNTOWN DEVELOPMENT
AUTHORITY OF THE VILLAGE OF ALMONT,

        Defendant/Counterplaintiff/Cross-
        Plaintiff-Appellee,

and

B. JOHN SHADROUI DO, PC, LANE-SWAYZE
CLINIC, LANE PROFESSIONAL BUILDING,
LLC, ROBERT E. LANE REVOCABLE LIVING
TRUST, ROBERT E. LANE REVOCABLE
LIVING TRUST NO. 1, and ROBERT E. LANE,

        Defendants/Cross-Defendants.

UNPUBLISHED
January 19, 2023

No. 358315
Lapeer Circuit Court
LC No. 2019-052717-CB

Before: M. J. KELLY, P.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

Plaintiff, Business Entrepreneurs, LLC, appeals as of right the trial court's judgment, entered after a bench trial, quieting title to real property in favor of defendant, Downtown Development Authority of the Village of Almont (the DDA). For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

The DDA is a board composed of residents and business owners in the village of Almont. Its purpose is to promote business in the downtown area of the Village. In 1996, the DDA entered into a land contract with the Lane-Swayze Clinic to purchase property in the Village for use as a

municipal parking lot. The purchase price was $55,000. The DDA paid $20,000 as a down payment and agreed to pay the balance in annual installments of $10,000 until December 30, 2001. The land contract was recorded with the Lapeer County Register of Deeds. The DDA contends that it made the annual payments and satisfied the terms of the land contract, but it never received a deed.

In 2018, Business Entrepreneurs purchased real property from other entities owned by Dr. Robert Lane, president of Lane-Swayze Clinic. When Business Entrepreneurs learned that the conveyances did not include the subject parking lot, it obtained an assignment from the Lane-Swayze Clinic of its vendor's interest in the 1996 land contract with the DDA. When the DDA learned about Business Entrepreneurs' purchase, it wrote to Lane-Swayze to request the deed for the parking lot. Lane-Swayze then provided a quit claim deed conveying his interest in the land. Thereafter, on April 1, 2019, Business Entrepreneurs filed this action for forfeiture of the land contract and to quiet title. The DDA filed counterclaims to quiet title and for slander of title.

The DDA was unable to produce bank statements or canceled checks to prove its payment of the land contract because it had retained those records only for seven years. However, it produced statements of revenues and expenses, and minutes of its board meetings, as proof that all payments were made in satisfaction of the land contract. The DDA also offered the affidavit of John Lehotan, CPA, to authenticate the financial statements he compiled regarding the DDA's debts. These statements showed the reduction of the DDA's debt under the land contract from 1997 to 2001, until the debt was eliminated in 2002. Lehotan stated that he prepared the statements from bank records provided by the DDA and that he verified the accuracy of the statements against the bank records. Business Entrepreneurs moved in limine to exclude these documents on the ground that they were inadmissible hearsay and not properly authenticated under MRE 902. The trial court denied the motion.

Both parties moved for summary disposition under MCR 2.116(C)(7), (C)(8), and (C)(10). The trial court dismissed Business Entrepreneurs' forfeiture and abandonment claims on the ground that they were filed outside the applicable 15-year limitations period for actions for the recovery of or possession of property. The court dismissed the DDA's counterclaim for slander of title on the ground that it could not prove that Business Entrepreneurs acted with malice when it recorded its quitclaim deed. The court conducted a bench trial on the quiet-title claim. It admitted into evidence the DDA's financial statements and meeting minutes over Business Entrepreneurs' objections. The court found that these documents were competent, circumstantial evidence that the DDA satisfied its obligation under the land contract. Accordingly, the court quieted title in favor of the DDA and awarded it fee simple title to the subject parking lot.

Business Entrepreneurs objected to the proposed judgment, but did not notice its objections for hearing. Thereafter, the court entered the DDA's proposed judgment. Business Entrepreneurs moved for relief from the judgment on the ground that the trial court should have scheduled a hearing on its objections. The court denied the motion and imposed a sanction of $500 against plaintiff for filing a meritless motion. Subsequently, the trial court stayed execution of the judgment pending this appeal.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

Business Entrepreneurs argues that the trial court erred by dismissing its forfeiture and abandonment claims on the basis that they were barred by the applicable statute of limitations. A trial court's decision on a motion for summary disposition is reviewed de novo. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). Summary disposition may be granted under MCR 2.116(C)(7) when a claim is barred by the statute of limitations. "In the absence of disputed facts, whether a cause of action is barred by the applicable statute of limitations is a question of law, which this Court reviews de novo." *Magee v DaimlerChrysler Corp*, 472 Mich 108, 111; 693 NW2d 166 (2005). Business Entrepreneurs also argues that it was entitled to summary disposition of the DDA's counterclaim to quiet title under MCR 2.116(C)(8). "A motion made pursuant to MCR 2.116(C)(8) tests the legal sufficiency of the complaint, and a court only considers the pleadings." *Eplee v City of Lansing*, 327 Mich App 635, 644; 935 NW2d 104 (2019) (quotation marks and citation omitted).

### B. ANALYSIS

### 1. STATUTE OF LIMITATIONS

The DDA argues that Business Entrepreneurs' forfeiture and abandonment claims arise from its alleged breach of the land contract, and therefore, the claims are subject to the six-year limitations period applicable to claims for recovery of money damages "due to breach of contract." MCL 600.5807(9). However, we conclude that MCL 600.5807(9) does not apply because Business Entrepreneurs was not suing for enforcement of the land contract or to recover money damages resulting from a breach of the land contract.

Business Entrepreneurs argues that its forfeiture and abandonment claims are subject to the limitation periods prescribed in MCL 600.5801, which provides:

> No person may bring or maintain any action for the recovery or possession of any lands or make any entry upon any lands unless, after the claim or right to make the entry first accrued to himself or to someone through whom he claims, he commences the action or makes the entry within the periods of time prescribed by this section.
>
> (1) Defendant claiming title under fiduciary's deed or court-ordered sale. When the defendant claims title to the land in question by or through some deed made upon the sale of the premises by an executor, administrator, guardian, or testamentary trustee; or by a sheriff or other proper ministerial officer under the order, judgment, process, or decree of a court or legal tribunal of competent jurisdiction within this state, or by a sheriff upon a mortgage foreclosure sale the period of limitation is 5 years.
>
> (2) Defendant claiming title under tax deed. When the defendant claims title under some deed made by an officer of this state or of the United States who is

authorized to make deeds upon the sale of lands for taxes assessed and levied within this state the period of limitation is 10 years.

(3) Defendant claiming title under will. When the defendant claims title through a devise in any will, the period of limitation is 15 years after the probate of the will in this state.

(4) Other cases. In all other cases under this section, the period of limitation is 15 years.

Business Entrepreneurs was seeking possession of the property on the basis that it had superior title to property pursuant to the Lane-Swayze Clinic's quitclaim deed and assignment of its vendor's interest in the land contract. Subsections (1), (2), and (3) do not apply because Business Entrepreneurs did not claim title to the property under a fiduciary's deed or court-ordered sale, a tax deed, or a will. The substance of the claim was that it had superior title to the property because the DDA lost its interest in the property through forfeiture or abandonment of the land contract. Therefore, the 15-year period in MCL 600.5801(4) applies.

Nevertheless, Business Entrepreneurs was not entitled to summary disposition under MCR 2.116(C)(7). Its abandonment and forfeiture claims were untimely filed because those claims accrued in 2001, when the land contract came to maturity, and Business Entrepreneurs did not file this action until 2019, more than 15 years later. "Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues." MCL 600.5827. Unless otherwise provided by statute, "the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damages results." MCL 600.5827. "Limitations periods in tort actions begin to run at the time all elements, including damages, can be alleged in a proper complaint." *Blazer Foods, Inc v Restaurant Props, Inc*, 259 Mich App 241, 254; 673 NW2d 805 (2003). The elements that Business Entrepreneurs had to prove to establish forfeiture arise from the legal and equitable principles governing transfer of real property through a land contract.

In *Graves v American Acceptance Mtg Corp*, 469 Mich 608, 616-617; 677 NW2d 829 (2004) (quotation marks and citations omitted), our Supreme Court considered the rights incident to legal and equitable ownership of land and explained that, in a land contract situation,

the vendee purchases the property upon signing the land contract and acquiring an equitable interest therein. At that point, the vendee acquires "seisin" and a present interest in the property that may be sold, devised, or encumbered. That the vendee may ultimately default on the contract does not negate the fact that the vendee has, in a real sense, purchased the relevant property. That legal title remains in the vendor until full performance of all contractual obligations likewise does not negate the fact that the vendee has already purchased the property. The vendor's legal title, . . . is only a trust coupled with an interest by way of security for a debt[.] . . . It represents but an ordinary money debt, secured by the contract.

In *Zurcher v Herveat*, 238 Mich App 267, 291; 605 NW2d 329 (1999), this Court observed:

-4-

The term "land contract" is commonly used in Michigan as particularly referring to "agreements for the sale of an interest in real estate in which the purchase price is to be paid in installments (other than an earnest money deposit and a lump-sum payment at closing) and no promissory note or mortgage is involved between the seller and the buyer." 1 Cameron, Michigan Real Property Law (2d ed), § 16.1, p 582. A land contract is therefore an executory contract in which legal title remains in the seller/vendor until the buyer/vendee upon proper execution of the contract. [Quotation marks and citation omitted.]

Under MCL 565.361(1), upon complete performance of a land contract vendee's contractual duties, i.e., complete payment of the purchase price and satisfaction of any other conditions, the land contract vendor is obligated to convey legal title to the vendee by an appropriate deed of conveyance. Thus, a land contract purchaser must satisfy the terms of the land contract to acquire full ownership and fee title to the property purchased under the land contract. Upon satisfaction of all conditions required by the land contract, the vendor becomes obligated to convey legal title to the purchaser/vendee. Conversely, if the purchaser fails to perform the terms of the land contract, the vendor has the right to declare that the purchaser has forfeited the land, entitling the vendor to retake possession. Finally, MCL 600.5726 provides:

A person entitled to any premises may recover possession thereof by a proceeding under this chapter after forfeiture of an executory contract for the purchase of the premises but only if the terms of the contract expressly provide for termination or forfeiture, or give the vendor the right to declare a forfeiture, in consequence of the nonpayment of any moneys required to be paid under the contract or any other material breach of the contract. For purposes of this chapter, moneys required to be paid under the contract shall not include any accelerated indebtedness by reason of breach of the contract.

The land contract in this case provided that the seller "immediately after . . . [purchaser's] default shall have the right to declare this contract forfeited . . . ." Therefore, the vendor's right to forfeiture would have been triggered if and when the DDA defaulted by failing to perform as required under the land contract. Business Entrepreneurs as the assignee of the Lane-Swayze Clinic's vendor's interest in the land contract, received whatever rights the clinic had with respect to the property, including the right to forfeiture. Business Entrepreneurs' theory is that the DDA defaulted on the land contract by failing to make the required installment payments. Under the land contract, the due date of the final installment payment was December 30, 2001. Because Business Entrepreneurs, as the assignee of the Lane-Swayze Clinic's land contract interest, is subject to the same limitations period that would have applied to the clinic if it had exercised its rights under the land contract, and because any right of forfeiture would have accrued on December 31, 2001, at the latest, plaintiff's claims for forfeiture and abandonment, brought more than 15 years later in 2019, were untimely. Accordingly, the trial court did not err by dismissing Business Entrepreneurs' forfeiture and abandonment claims under MCR 2.116(C)(7).

## 2. QUIET TITLE

Business Entrepreneurs argues that it was entitled to summary disposition of the DDA's counterclaim to quiet title because the DDA, as a land contract purchaser, only acquired equitable

title to the subject property, which according to Business Entrepreneurs, is insufficient as a matter of law to bring a claim to quiet title to property.

There is no dispute that the DDA acquired *equitable* title to the subject property. Indeed "under a land contract, although the vendor retains legal title until the contractual obligations have been fulfilled, the vendee is given equitable title, and that equitable title is a present interest in realty that may be sold, devised, or encumbered." *Graves*, 469 Mich at 616. In support of its argument that a claim to quiet title may not be predicated on an equitable interest in property, Business Entrepreneurs relies on this Court's statement in *Beulah Hoagland Appleton Qualified Personal Residence Trust v Emmet Co Rd Comm*, 236 Mich App 546, 550; 600 NW2d 698 (1999), that "[i]n an action to quiet title, the plaintiffs have the burden of proof and must make out a prima facie case of title." However, *Beulah Hoagland Appleton Trust* did not involve a land contract or draw a distinction between "legal title" and "equitable title" for purposes of bringing a claim to quiet title. Rather, in reversing the trial court's ruling that the plaintiffs' quiet-title claim could not withstand summary disposition, this Court held that the plaintiffs "presented sufficient prima facie evidence that they did acquire and now do possess some interest, *legal or equitable*, in the property." *Id*. at 550. The court never indicated that equitable title alone would be insufficient. Indeed, the statute that governs actions to quiet title, MCL 600.2932, expressly provides, in pertinent part:

> (1) Any person, whether he is in possession of the land in question or not, who claims any right in, title to, *equitable title to*, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff, whether the defendant is in possession of the land or not. [Emphasis added.]

We conclude that because an action to quiet title may be based upon equitable title, the trial court did not err by denying Business Entrepreneurs' motion for summary disposition on the DDA's quite-title counterclaim.

Business Entrepreneurs also contends that the DDA's counterclaim to quiet title is barred by the statute of limitations. We conclude that this issue is waived. Although Business Entrepreneurs initially raised this issue in its motion for summary disposition, it withdrew the issue at the motion hearing and it did not thereafter raise the issue in its trial brief or written closing arguments. In civil cases, we follow the "raise or waive" rule of appellate preservation. *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008). As explained in *Walters*,

> The principal rationale for the rule is based in the nature of the adversarial process and judicial efficiency. By limiting appellate review to those issues raised and argued in the trial court, and holding all other issues waived, appellate courts require litigants to raise and frame their arguments at a time when their opponents may respond to them factually. This practice also avoids the untenable result of permitting an unsuccessful litigant to prevail by avoiding its tactical decisions that proved unsuccessful. Generally, a party may not remain silent in the trial court, only to prevail on an issue that was not called to the trial court's attention. Trial courts are not the research assistants of the litigants; the parties have a duty to fully

present their legal arguments to the court for its resolution of their dispute. [*Id*. at 387-388 (citations omitted).]

Here, Business Entrepreneurs appears to have made a tactical decision to withdraw its argument during the hearing on its motion for summary disposition. It then did not renew its argument during later proceedings before the trial court. Therefore, we conclude that the issue is waived by Business Entrepreneurs' failure to raise it before the trial court.

## III. LACHES

Business Entrepreneurs argues that the DDA's delay in requesting a deed and bringing its claim was unreasonable because faded memories and loss of documents put Business Entrepreneurs at a disadvantage. "To successfully assert laches as an affirmative defense, a defendant must demonstrate prejudice occasioned by the delay." *Home-Owners Ins Co v Perkins*, 328 Mich App 570, 589; 939 NW2d 705 (2019) (quotation marks and citation omitted).

> The doctrine of laches is founded upon long inaction to assert a right, attended by such intermediate change of conditions as renders it inequitable to enforce the right. The application of the doctrine of laches requires the passage of time combined with a change in condition that would make it inequitable to enforce the claim against the defendant. To merit relief under this doctrine, the complaining party must establish prejudice as a result of the delay. Proof of prejudice is essential. *Twp of Williamstown v Sandalwood Ranch, LLC*, 325 Mich App 541, 553; 927 NW2d 262 (2018) (quotation marks and citation omitted)].

The evidence at trial did not support application of a laches defense. Although the DDA delayed requesting a deed for the property, this delay cannot be considered prejudicial to Business Entrepreneurs where Business Entrepreneurs had notice of the DDA's interest in the property because the land contract was recorded and where the DDA had continuously maintained the property since then, without anyone else asserting a superior right or interest in the property before Business Entrepreneurs claimed to have acquired its interest in the property in 2018. The DDA promptly filed its counterclaim to quiet title after Business Entrepreneurs first asserted a competing interest in the property. Moreover, Business Entrepreneurs' principal, Stephen Francis, conceded that its predicament was partly caused by his own mistaken belief that his purchase of the neighboring 209 Main Street property included the subject parking lot. Under these circumstances, the trial court did not err by failing to apply the doctrine of laches.

## IV. ADMISSION OF DOCUMENTARY EVIDENCE

### A. STANDARD OF REVIEW

Business Entrepreneurs argues that the trial court erroneously allowed the DDA to introduce various financial statements, business records, and minutes from defendant's prior board meetings to document payment of the land contract debt. "A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010). "An abuse of discretion occurs when the decision results in an outcome

falling outside the range of principled outcomes." *Keinz v Keinz*, 290 Mich App 137, 141; 799 NW2d 576 (2010).

## B. ANALYSIS

## 1. AUTHENTICATION

Business Entrepreneurs first argues that the various records and board minutes were not properly authenticated. MRE 902 lists 11 categories of documents or records that do not require extrinsic evidence of authenticity. MRE 902(11) states that extrinsic evidence is not required for:

> **Certified Records of Regularly Conducted Activity.** The original or a duplicate of a record, whether domestic or foreign, of regularly conducted business activity that would be admissible under Rule 803(6), if accompanied by a written declaration under oath by its custodian or other qualified person certifying that
>
> (A) The record was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;
>
> (B) The record was kept in the course of the regularly conducted business activity; and
>
> (C) It was the regular practice of the business activity to make the record.

MRE 902(1) further provides that

> [a] party intending to offer a record into evidence under this paragraph must provide written notice of that intention to all adverse parties, and must make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them.

Business Entrepreneurs argues that Lehotan's role as auditor was inconsistent with his purported role in preparing the documents, but does not cite any authority establishing that the services Lehotan rendered to the DDA preclude him from being a qualified person under MRE 902(11). Indeed, Lehotan was not the custodian of the financial records, but he was an "other qualified person" because he personally prepared the records from documents provided by the DDA and he kept them as part of his regular business activity as the DDA's accountant. His statements in his affidavit that he prepared the financial statements from bank records provided by the DDA and verified the accuracy of the statements against the bank records, and that he prepared and kept the records in the normal course of his regularly conducted business activity as the DDA's accountant were sufficient to satisfy the requirements of MRE 902(11).

Business Entrepreneurs also argues that Lehotan's financial statements involve an expert opinion requiring compliance with MRE 702. MRE 702 provides that if "scientific, technical, or other specialized knowledge" would assist the trier of fact in understanding the evidence or determining a fact in issue, an expert opinion is admissible if the witness is qualified and the trial court determines that the opinion is based on reliable methods. MRE 703 provides that the facts

and data "upon which an expert bases an opinion or inference shall be in evidence." Lehotan's financial statements do not contain statements of opinion or specialized knowledge. They contain factual data compiled from his personal involvement in reviewing the DDA's financial records. Business Entrepreneurs argues that he did not have the opportunity to depose or cross-examine Lehotan, but the DDA's lawyer indicated at trial that Business Entrepreneurs could have chosen to depose Lehotan or call him as a witness. Business Entrepreneurs does not claim that it was prevented from calling Lehotan as a witness.

Business Entrepreneurs also argues that Patricia Lucas was not qualified to authenticate the statements of expenses and revenue that she compiled from 1999 to 2001 from contemporaneous bank statements and the DDA's check register. Lucas testified that, as executive director of the Lapeer Development Corporation, she had access to the DDA's records to prepare the reports. She explained that she reviewed and reconciled the records every month. She was certain that all of the payments listed in the statements that she prepared were verified by bank statements at the time she prepared them. She stated that she did not merely believe that the statements were accurate, but rather confirmed that they were accurate by independently examining the contemporaneous bank statements and check register. She admitted that she did not have the bank records in her possession after she retired in June 2019. This testimony confirmed that the statements of expenses and revenue were made by a person with knowledge of the relevant matters, that they were kept in the regular course of Lucas's performance of her responsibilities, and that it was the regular practice of the Lapeer Development Corporation to make the records. Business Entrepreneurs' arguments that Lucas's statements could not be cross-checked against the contemporaneous bank records, and that she could not establish a chain of custody for the financial statements after her retirement, do not reflect requirements of MRE 902.

Finally, Business Entrepreneurs argues that defendant's director, Kim Schall, was not qualified to authenticate the board meeting minutes that were created before she began her employment with the DDA. Schall described the process of how the board's minutes are reviewed and approved for accuracy, and accepted for filing. Schall testified that she had personal knowledge of the DDA's procedures for creating, approving, and storing the minutes. She described how she retrieved the minutes for the relevant years in accordance with the DDA's filing system. This testimony supports a finding that the minutes were made by board members with knowledge of the relevant matters, and that they were kept in the regular course of the DDA's board meeting procedures. Schall was not required to have personal knowledge of the chain of custody of all records from the time the records were created to their production in this lawsuit.

## 2. HEARSAY

Business Entrepreneurs asserts that the trial court erred by ruling that the documents were admissible under MRE 803(6). Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is generally inadmissible unless otherwise permitted by the rules of evidence. MRE 802. MRE 803(6) provides the following exception to the general rule precluding hearsay evidence:

> **Records of Regularly Conducted Activity.** A memorandum, report, record, or data compilation, in any form, of acts, transactions, occurrences, events, conditions, opinions, or diagnoses, made at or near the time by, or from information

transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with a rule promulgated by the supreme court or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Business Entrepreneurs reiterates its arguments that Schall was not qualified to establish the admissibility of the board minutes because she was not employed when the minutes for the relevant time periods were created, and Lucas was not qualified to establish the admissibility of the financial statements because she had not seen them in years and did not know who kept them in the interim. However, it was only necessary that the minutes and financial records reflected transactions or events, made at or near the time by, or from information transmitted by, a person with knowledge, and were kept in the course of a regularly conducted business activity and it was the regular practice of that business activity to create those records. As explained earlier, Lucas's and Schall's testimony was sufficient to establish these requirements.

Business Entrepreneurs also complains that many of the records contain additional handwritten notes that added an additional layer of hearsay, and which the witnesses could not authenticate as part of the original records. However, the trial court agreed to strike and "white out" the additional handwritten notes. Although Business Entrepreneurs now suggests on appeal that the trial court improperly "altered" the records, the court only disregarded the handwritten notes that could not be authenticated as having been created as part of the original records or added as part of a regularly conducted business activity. Moreover, Business Entrepreneurs does not explain how it was prejudiced by the trial court's decision not to consider the added handwritten notes. Therefore, Business Entrepreneurs is not entitled to relief with respect to this issue.

## V. SUFFICIENCY OF THE EVIDENCE

### A. STANDARD OF REVIEW

Business Entrepreneurs argues that the trial court's decision to quiet title to the subject property in the DDA's favor is not supported by the evidence. "This Court reviews a trial court's factual findings in a bench trial for clear error, and reviews its conclusions of law de novo." *Trahey v City of Inkster*, 311 Mich App 582, 593; 876 NW2d 582 (2015). The trial court's decision in an action to quiet title, which is an equitable action, is also reviewed de novo. *Beach v Twp of Lima*, 489 Mich 99, 106; 802 NW2d 1 (2011).

### B. ANALYSIS

In an action to quiet title, the plaintiff has the initial burden of establishing a prima facie case of title. *Special Prop VI v Woodruff*, 273 Mich App 586, 590; 730 NW2d 753 (2007). The plaintiff must present prima facie evidence that the plaintiff acquired and now possesses a legal or

equitable interest in the property in question. *Beulah Hoagland Appleton Trust*, 236 Mich App at 550.

The DDA presented evidence that it acquired equitable title to the subject property pursuant to a 1996 land contract with the Lane-Swayze Clinic, which was duly recorded. Business Entrepreneurs asserted an interest in the property pursuant to a 2018 conveyance from the Lane-Swayze Clinic, but under Michigan's race-notice statute, MCL 565.29, "the holder of a real estate interest who first records his or her interest generally has priority over subsequent purchasers." *Richards v Tibaldi*, 272 Mich App 522, 539; 726 NW2d 770 (2006). Business Entrepreneurs also asserted a superior interest in the subject property as an assignee of the Lane-Swayze Clinic's vendor's interest in the land contract. However, that claim was dependent upon Business Entrepreneurs' theory that the DDA never acquired a right to legal title because it never fully made the payments required by the land contract. Although, due to the passage of time, the DDA no longer possessed canceled checks and bank records to verify the land contract payments, the trial court found that the DDA presented compelling circumstantial evidence in the form of financial statements and board meeting minutes that documented the land contract payments by the DDA, and the reduction and eventual elimination of the land contract debt. The trial court reasoned:

> The balance owed on the land contract at the time it was executed was $35,000 with interest accruing at an annualized rate of nine or ten percent. [The DDA's] regularly-compiled statements of revenue and expenses reflect that checks payable to Dr. Robert Lane in the amount of $10,000 each were written on December 31, 1997, January 27, 1999, January 10, 2000, and February 26, 2001. These checks correspond to the amount and the date of annual payments due under the land contract. The statements further reflect that each check cleared [the DDA's] account. These statements were prepared by Patricia Lucas, an employee of Lapeer Development Corporation, who testified that she had the check ledgers and bank statements for [the DDA's] accounts each month when she prepared the reports. She would have been tasked with investigating any discrepancy in the accounts in all the years she prepared its financial statements. Further, [the DDA] annually budgeted for the land contract payments during the relevant time period, and it reported the balance owed as a long-term liability on its annual reports.

The trial court also considered the possibility that a third party could have stolen the checks or embezzled the funds intended for Dr. Lane, but it rejected that possibility, reasoning that (1) it was unlikely that such a scenario could have been repeated without detection for four years, (2) there was no evidence that Dr. Lane ever complained that payments were overdue, and (3) there was nothing suspicious about the DDA's destruction of the bank records due to the passage of time and there was no evidence that the DDA acted in bad faith or had any reason to believe that someone would contest its claim to the parking lot almost 20 years after the land contract would have terminated by its terms. The court observed that the land contract entitled the DDA to a $5,000 credit if it removed a building on the property and the board meeting minutes documented that the DDA's board accepted a contractor's bid for that project and later approved payment to the contractor for performing the work, consistent with the terms of the land contract. The trial court concluded that the DDA's "payment of $40,000 cash plus a $5,000 credit for demolishing the abandoned structure more than covered the balance owed on the land contract." The evidence

supports each of the trial court's findings, and those findings are not clearly erroneous. Accordingly, the trial court did not err by quieting title to the subject property in the DDA's favor.

## VI.  RELIEF FROM JUDGMENT

### A.  STANDARD OF REVIEW

Business Entrepreneurs asserts that the trial court erred by denying its motion for relief from judgment, and by imposing a sanction of $500 for filing the motion. "A trial court's decision on a motion for relief from judgment is reviewed for an abuse of discretion." *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 404; 651 NW2d 756 (2002).  A trial court's decision regarding the imposition of a sanction under MCR 1.109(6) is also reviewed for an abuse of discretion.  See *FMB-First Mich Bank v Bailey*, 232 Mich App 711, 726-727; 591 NW2d 676 (1998) (interpreting former MCR 2.114(E) and (F)).

### B.  ANALYSIS

Business Entrepreneurs moved for relief from judgment under MCR 2.612(C)(1)(f), which provides that a court may set aside a final judgment, order, or proceeding for "[a]ny other reason justifying relief from the operation of the judgment."  Business Entrepreneurs sought relief from judgment on the ground that the trial court misapplied MCR 2.602(B)(3) when it entered the DDA's proposed judgment.  MCR 2.602(B)(3) provides:

> (3) Within 7 days after the granting of the judgment or order, or later if the court allows, a party may serve a copy of the proposed judgment or order on the other parties, with a notice to them that it will be submitted to the court for signing if no written objections to its accuracy or completeness are filed with the court clerk within 7 days after service of the notice.  The party must file with the court clerk the notice and proof of service along with the proposed judgment or order.

> * * *

> (c) The party filing the objections must serve them on all parties as required by MCR 2.107, together with a notice of hearing and an alternative proposed judgment or order.

MCR 2.602(B)(3)(c) plainly requires that a party filing objections must serve them on the other party, "together with a notice of hearing."  Business Entrepreneurs failed to comply with the rule when it filed its objections without also filing a notice of hearing.  Business Entrepreneurs argues that the trial court was required to set the objections for hearing under MCR 2.602(B)(3)(d), even if it failed to give notice of the hearing.  However, MCR 2.602(B)(3)(d) provides that the trial court "must schedule *the* hearing," which refers to the hearing that the objecting party was required to first notice.  The court rule does not require the trial court to schedule "*a* hearing." "The words 'the' and 'a' have different meanings, because the word 'the' is a definite article and the word 'a' is an indefinite article." *Kilian v TCF Nat'l Bank*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 358761); slip op at 4-5. "The word 'a' has general application, while the word 'the' refers to a specific thing." *Id*. at ___; slip op at 4-5.  MCR 2.602(B)(3)(d) thus refers

-12-

to *the* hearing that the objecting party was required to notice under the previous subparagraph. Business Entrepreneurs' argument is therefore contrary to the plain language of the court rule.

Further, Business Entrepreneurs failed to demonstrate any injury from the trial court's judgment that justified relief from the operation of the judgment. Business Entrepreneurs objected to the judgment because it contained language regarding entry of judgment in favor of the DDA on its counterclaim, in addition to stating that "title shall be vested" in defendant. Business Entrepreneurs argued that the additional language was not contained in the trial court's opinion. However, the court stated in its opinion that both parties had filed claims to quiet title, that a judgment of no cause of action shall enter on Business Entrepreneurs' claim, and that "this court finds in favor of quieting title in the name of defendant." The judgment's statement that "Judgment shall enter in favor of the Counter-Complaint" in addition to its statement that "title shall be vested" in the DDA is consistent with the relief ordered in the trial court's opinion. Because Business Entrepreneurs failed to demonstrate any injury from the language in the judgment, the trial court did not abuse its discretion by denying Business Entrepreneurs' motion for relief from the judgment.

Business Entrepreneurs also argues that the trial court erred by imposing a sanction of $500 under MCR 1.109(6) for its filing of the motion for relief from judgment, which the trial court found to be frivolous. MCR 1.109(E)(5) provides that a party's signature on a document certifies that "to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law . . . ." If a party signs a document in violation of this rule, the court "shall impose upon the person who signed it . . . an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees." MCR 1.109(6). Business Entrepreneurs had no reasonable basis for believing that it was entitled to relief from the judgment that was entered because (1) the court was not required to sua sponte schedule a hearing on its objections to the proposed judgment when Business Entrepreneurs failed to file a notice of hearing, and (2) the judgment that was entered was consistent with the relief ordered in the trial court's opinion. Therefore, the trial court did not abuse its discretion by imposing the sanction.

Affirmed. The DDA may tax costs as the prevailing party. MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle